**STATE of Missouri, Respondent,**

v.

**Matthew W. SMITH, Appellant.**

**No. WD 75322.**

Missouri Court of Appeals, Western District.

Dec. 3, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 2014.

Application for Transfer Denied March 25, 2014.

Jennifer Rodewald, Jefferson City, MO, for Respondent.

Amy Marie Bartholow, Colombia, MO, for Appellant.

Before Division One: ALOK AHUJA, P.J., THOMAS H. NEWTON, ANTHONY REX GABBERT, JJ.

ANTHONY REX GABBERT, Judge.

Matthew W. Smith appeals the circuit court's judgment finding him guilty of possession of child pornography. Smith raises four points on appeal. First, Smith argues that the circuit court abused its discretion in overruling his objection during the State's closing argument because the State misstated the law regarding pornography. Second, Smith argues that the circuit court plainly erred in permitting the State to introduce into evidence testimony from a detective stating that he pulled twenty-one images of "child pornography" off of Smith's hard drive. Third,

Smith argues that the circuit court plainly erred in giving the jury Instruction 18 and supplementing that instruction with additional comments. Lastly, Smith argues that the circuit court abused its discretion when it considered Smith's failure to admit his guilt in the presentence investigation and at sentencing in determining his sentence. We affirm.

## Statement of Facts

Detective Thomas Cates with the Buchanan County Sheriff's Department was assigned to the Western Missouri Cyber Crimes Task Force on January 19, 2010. On that day, Cates used a computer program to locate the addresses of internet users who had downloaded or maintained images of probable child pornography. Use of the program led Cates to Smith's home address as the physical address of a computer that maintained these images. Cates contacted the Andrew County Sheriff's Department and offered his assistance in the investigation of this matter to which the Sheriff's Department accepted his assistance.

On January 27, 2010, Cates obtained a search warrant to search Smith's residence for the presence of data storage and recovery devices that could contain evidence of child pornography. Cates, along with Deputy Grant Gillette and four other officers from the Andrew County Sheriff's Department, executed the search warrant the next day. Smith answered the door. Cates informed Smith that he was searching for items of child pornography. Smith responded that "it would be on a computer in his bedroom."

While other officers conducted the search, Cates interviewed Smith. Cates advised Smith of the Miranda warnings, and Smith signed a waiver form and agreed to speak with Cates. Cates wrote down Smith's statement based on what Smith said. Smith insisted on adding the following sentence to the end of the statement: "In no way would I ever act upon any sexual thoughts towards children." Smith then initialed at the beginning and end of each paragraph and signed the bottom of the statement. Gillette was present when Smith made the statements to Cates.

Cates seized a Gateway desktop computer, a Compaq Presario laptop, a cell phone, and a thumb drive from Smith's residence. Cates submitted the hard drive from the Gateway desktop to Detective William McGuire at the Heart of America Regional Forensics Laboratory. After examining the hard drive, McGuire located twenty-one files containing digital images of what he deemed to be children engaging in sex acts. The court accepted all twenty-one images that McGuire retrieved from the Gateway hard drive into evidence.

Smith did not testify at trial, but he presented testimony of six witnesses who testified that Smith allowed anyone in the neighborhood to use the computer. Several of these witnesses further testified that Smith had a reputation in the community for being a law-abiding citizen. The jury found Smith guilty of the class B felony of possession of child pornography. The jury was unable to reach a unanimous verdict as to sentencing, so the court sentenced Smith to twelve years imprisonment. Smith appeals.

## State's Closing Argument

■ In Smith's first point on appeal, he argues that the circuit court abused its discretion in overruling his objection to the State's closing argument because the State asserted that pornography of any kind is a crime in Missouri.[1] He contends that the

---

1. Smith included this ruling as a claim of error in his motion for new trial, thus preserving it for this Court's review. Rule 29.11(d).

State's argument (1) was an incorrect statement of law because adult pornography is not illegal to possess for personal use; (2) improperly limited Smith's defense that he knowingly possessed only adult, not child, pornography; and (3) led the jury to believe that Smith was "guilty" of the uncharged "crime" of possessing adult pornography, so he must be guilty of possessing child pornography as well.

■■■ "A trial court maintains broad discretion in the control of closing arguments." *State v. Middleton*, 995 S.W.2d 443, 455 (Mo. banc), *cert. denied*, 528 U.S. 1054, 120 S.Ct. 598, 145 L.Ed.2d 497 (1999). The "[t]rial court's rulings on objections to closing arguments are reviewed for abuse of discretion; however, when a proper objection is made, the trial courts should exclude 'statements that misrepresent the evidence or the law' or statements that 'tend to confuse the jury.'" *State v. Brightman*, 388 S.W.3d 192, 201 (Mo.App. 2012) (quoting *State v. Deck*, 303 S.W.3d 527, 543 (Mo. banc 2010)). "Unless that discretion has been clearly abused to the prejudice of the accused, the trial court's ruling should not be disturbed on appeal[.]" *State v. Kriebs*, 978 S.W.2d 460, 466 (Mo.App.1998). "Even if a trial court is found to have abused its discretion by allowing improper closing argument, to warrant reversal of a conviction, the defendant also must establish that such abuse prejudiced him or her." *State v. Williams*, 24 S.W.3d 101, 124 (Mo.App.2000). "To establish prejudice, the defendant must show that there is a reasonable probability that, in the absence of the trial court's abuse, the verdict would have been different." *Id.*

During its closing argument, the State told the jury that Smith's counsel made a mistake during her opening statement[2] "where she stated that adult pornography is not against the law, well, that's wrong." Smith objected that there was no evidence presented regarding this issue. The State continued: "The Court can take judicial notice and the State can argue the case, and the fact is that under the statutes, pornography of any kind, adult or otherwise, is a crime in the State of Missouri. That was a misstatement. I'm simply trying to clarify." The circuit court overruled Smith's objection but told the State to move on from the adult pornography issue.

■ Here, the State's statement during closing argument appears to misstate the law regarding pornography. *See* §§ 573.010–100, RSMo.2000[3] (finding no statute prohibiting the possession of adult pornography). *But see* §§ 573.020, 573.035 (possessing adult pornography with the intent to promote or for pecuniary gain is a crime); § 573.040 (furnishing adult pornography to a minor is a crime). Even assuming, however, that the court abused its discretion in overruling Smith's objection regarding the statements made in the State's closing argument, Smith fails to show that absent the court's abuse of discretion there is a reasonable probability that the verdict would have been different.

The record reflects that there was overwhelming admissible evidence of Smith's guilt as to his possession of child pornography. *See also Williams*, 24 S.W.3d at 125 (finding no prejudice even if the trial court erred in overruling defendant's objection to State's closing argument in light of the overwhelming evidence of defendant's

---

2. Smith's counsel stated in her opening argument: "Now, you will hear testimony that adult pornography was not at issue. Adult pornography is legal. What is at issue is child pornography."

3. All statutory references are to the Revised Statutes of Missouri 2000, updated by the 2013 cumulative supplements, unless otherwise noted.

guilt). Here, McGuire testified that he found twenty-one images of child pornography on Smith's computer. Additionally, when Cates presented Smith with a search warrant at his home and told him that he was searching for child pornography, Smith responded that "it would be on a computer, in his bedroom." Smith also provided a written statement admitting that he downloaded images of child pornography. In his written statement, Smith stated that he used Limewire to download pornography some of which "was of persons [he] believe[d] to be under 18 years of age." He further stated that he "was in no way aware [he] was sharing the child pornography with anyone, [he] was just downloading it for personal use." Although Smith did not write the statement, Smith initialed at the beginning and end of each paragraph and signed the statement after having the opportunity to read the statement. All of this admissible evidence reflects that there was overwhelming evidence on the record to support Smith's conviction of possession of child pornography.

Despite this evidence, Smith argues that the State's misstatement limited his defense that he only knowingly possessed adult pornography and did not knowingly possess child pornography. The misstatement, however, was not made until closing arguments. Thus, Smith would not have been precluded from arguing and putting forth evidence that he only knowingly possessed adult pornography because the misstatement was not made until after all of the evidence had been presented at trial. Perhaps most damaging to Smith's argument that he only knowingly possessed adult pornography are the two statements made by Smith on the record admitting to knowingly possessing child pornography— the oral response to Cates when Smith was presented with the search warrant and the written statement. Moreover, the only pornographic images admitted into evi-

dence were the twenty-one images that the jury determined were child pornography. With this evidence on the record, even if Smith's defense was not limited as he claimed, it is not reasonably probable that the verdict would have been different had the statement not been made.

■ Lastly, Smith argues that the State's misstatement led the jury to believe that Smith was guilty of the uncharged "crime" of possessing adult pornography, so he must be guilty of possessing child pornography as well. "The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior or uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes." *State v. Uka*, 25 S.W.3d 624, 626 (Mo.App.2000). However, a defendant cannot complain about matters he himself brings into the case. *State v. Collier*, 892 S.W.2d 686, 691–92 (Mo. App.1994). Here, it was Smith who first referenced adult pornography in his opening argument. While the State did present evidence that adult pornography was found on the computer, the State only admitted into evidence the twenty-one images that it considered to be child pornography. No other pornographic images were admitted. Thus, the State did not emphasize the adult pornography issue until it made the misstatement in closing argument. And even then, the State clarified what it thought was a misstatement of law by Smith in his opening argument.

■ Moreover, "[m]isstatements of the law are not deemed reversible error when the proper law is given to the jury because we assume the jury followed the law as stated in the instructions." *State v. Chism*, 252 S.W.3d 178, 186 (Mo.App.2008). We presume, and Smith does not argue

otherwise, that the jury was provided with the proper law regarding the possession of child pornography charge. The possession of child pornography statute does not contain anything regarding possession of adult pornography. § 573.037. Also, the only time the misstatement of law was made was during the State's closing argument and, even though the court overruled Smith's objection, it told the State to move on from the adult pornography issue. By so doing, the court's action reflects the non-issue that Smith's possession of adult pornography was in the case at bar. Thus, we assume that the jury did not consider the misstatement of law regarding adult pornography in determining Smith's guilt of the possession of child pornography charge. However, even if the jury did consider the misstatement, there is overwhelming admissible evidence of Smith's guilt as to his possession of child pornography. Therefore, even if the court erred in overruling Smith's objection to the State's misstatement of the law regarding adult pornography, Smith fails to show that absent the court's error there was a reasonable probability that the verdict would have been different. As a result, the error was not prejudicial. Point one is denied.

### Expert Testimony

In Smith's second point on appeal, he argues that the circuit court plainly erred in permitting the State to introduce into evidence through Detective McGuire's testimony that he pulled twenty-one images of "child pornography" off of Smith's hard drive. Smith contends that McGuire's testimony that the images were child pornography invaded the province of the jury and manifest injustice resulted because (1) it is up to the jury to determine whether the twenty-one images constitute child pornography; (2) the defense argued that at least some of the images were questionable as to the age of the person involved; and (3) the jury may have been heavily influenced by the fact that the State's forensic investigator had already determined that all of the images constituted child pornography. We disagree.

Smith concedes that he failed to object to McGuire's testimony at trial. Therefore, this Court's review of Smith's second point is limited to plain error review. Rule 30.20 states in part that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "In reviewing a claim under the plain-error standard, this Court first asks 'whether there facially appears substantial grounds for believing that the trial court committed error that is evident, obvious, and clear, which resulted in manifest injustice or a miscarriage of justice.'" *Wagner v. Mortgage Info. Servs., Inc.*, 261 S.W.3d 625, 632 (Mo.App.2008) (quoting *Cohen v. Express Fin. Servs., Inc.*, 145 S.W.3d 857, 864 (Mo.App.2004)). "If in applying this standard the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps." *Id.* at 632–33. "First, the court must determine whether the trial court actually committed evident, obvious, and clear error that affected substantial rights." *Id.* In the second step, "the court must determine whether the evident, obvious, and clear error found resulted in manifest injustice or a miscarriage of justice." *Id.*

"The general purpose of expert testimony is to aid the jury in areas that are outside the everyday experience of the layperson." *State v. Cochran*, 365 S.W.3d 628, 633 (Mo.App.2012). "Experts may testify to ultimate issues in a case so long as it aids the jury and does not invade its province." *Id.* McGuire testified that he was given a search warrant to search Smith's hard drive for possible child por-

nography files. McGuire testified, in part, to the following:

[State]: When you receive a request like this is the search conducted exclusive for child pornography as that's defined in Missouri?

[McGuire]: No.

[State]: So when you're extracting— when you're doing an examination and you're doing an examination for possible child pornography, just tell us what it is that you extract.

[McGuire]: Well, bear in mind that I get cases from all over the United States, so there's no way that I can know—I can't tell what your definition is. So what I'm going to give you are possibilities—it's as simple as this, I look for somebody who looks like they're 18 or younger, either naked or not, if they're engaged in a sexual act. And that is what you're going to get.

[State]: I understand. So the images that you pulled off of the hard drive [are] child pornography, is that correct, sir?

[McGuire]: Yes, sir.

Here, it is clear from McGuire's testimony that he did not invade the province of the jury with his testimony that the twenty-one images were child pornography. First, McGuire testified that he did not know the definition of child pornography in Missouri. Second, McGuire testified to what he looks for when conducting searches for possible child pornography. McGuire explained that "what I'm going to give you are possibilities," emphasizing that he did not make a definitive determination that the images he extracted constituted child pornography under Missouri law. Lastly, using the criteria he defined, McGuire testified that the twenty-one images that he found on Smith's computer constituted child pornography. The jury, however, was properly given the Missouri definition of child pornography as part of

the jury instruction. Therefore, McGuire's testimony did not invade the province of the jury because even though he testified that the images met his definition of child pornography, the jury was required to determine if the images met Missouri's definition of child pornography. Smith presents no substantial grounds to support that the court committed clear error in failing to sua sponte reject McGuire's testimony. Point two is denied.

### Sentencing Instruction 18

■■■ In his third point on appeal, Smith argues that the circuit court plainly erred in giving the jury Instruction 18 and in supplementing that instruction with additional comments that it would give the jury another half-hour to deliberate before it would take over and impose punishment. He contends that the premature instruction and extraneous commentary had the effect of inviting the jury to abdicate its primary duty to fix Smith's punishment. We disagree.

■■■■ Smith concedes that he failed to properly object to the jury instruction. Thus, this Court's review is limited to determining whether the giving of the jury instruction was plain error. *State v. Gaskins,* 66 S.W.3d 110, 113 (Mo.App.2001); Rule 30.20. "Instructional error rarely rises to the level of plain error." *State v. Scott,* 278 S.W.3d 208, 212 (Mo.App.2009). For a defendant to establish plain error from an instructional error, he "must show more than mere prejudice and must show that the circuit court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict, and cause[d] manifest injustice or miscarriage of justice." *Id.* (internal citation and quotation marks omitted).

After sentencing arguments, the jury retired to deliberate. About an hour later, the jury sent the court a note indicating

that the jury could not come to a unanimous verdict. The jury then returned to the courtroom and the following exchange took place:

Court: [Foreperson] would you stand please? I received a note from you that the jury has not come to a unanimous verdict; is that correct?

[Foreperson]: That is correct, sir.

Court: Do you believe that additional deliberations would be of any value?

[Foreperson]: I'd have to ask each one of them to find out. I myself would say yes, but I don't know what they would say, sir.

Court: All right.

[Foreperson]: I believe we can come up with a solution.

Court: All right. Under those circumstances, thank you, sir, have a seat. I'm going to read you an additional instruction at this time.

The court then read Instruction 18 to the jury.[4] The instruction states:

The Court will now read to you an additional instruction that will be handed to you. You must bear in mind that under the law it is the primary duty and responsibility of the jury to assess and declare the punishment. If, however, after due deliberation, you are unable to agree upon punishment, you will complete the verdict form so stating, and in that event the Court will fix the punishment.

After reading Instruction 18 to the jury, the court told the jury the following:

Now, ladies and gentlemen, it's 2:42. What I'll do is I'll give you another half an hour to deliberate. If you're still at an impasse, I'll bring you back in in

roughly a half an hour, say 3:15, and see if you're still unable to deliberate. And if so, then we may possibly just go ahead and I'll take over and impose the punishment.

It's your primary responsibility, as I just read to you, so I want to give you the opportunity to do that. But we do have to set a final time limit of how long we're going to do this. So let's have you go back in and see what you can do.

If not, then either send a note back out and let us know that or if around 3:15 if you're still unable to come to a punishment, then I'll bring you back in and have you so state in court.

After consulting with the attorneys, the court amended the return time to 3:30 pm. At 3:01 pm, the jury returned to the courtroom and notified the court that they were unable to reach an unanimous verdict. Thereupon, the court had the foreperson sign a verdict form stating that the jury was unable to decide or agree upon the punishment. The court adjourned the sentencing until June 11th. On June 11th, the court sentenced Smith to twelve years in prison.

█ Smith argues that giving Instruction 18 to the jury after the jury had deliberated for one hour was insufficient time to constitute "due deliberation" by the jury. "When MAI–CR 4.50[5] is to be given depends not only upon time but upon the circumstances." *State v. Noble*, 591 S.W.2d 201, 205 (Mo.App.1979). Because Smith fails to establish that he was prejudiced by the court giving Instruction 18 after an hour of jury deliberation, this Court, therefore, need not determine if the instruction was inappropriate.[6] For plain

---

**4.** Instruction 18 that was given is MAI–CR3d 305.07.

**5.** MAI–CR 4.50 was the predecessor to MAI–CR3d 305.07. No substantive changes were made.

**6.** We do not condone the trial court's use of time limits on jury deliberations but under the facts and circumstances of this case the use of the time limits did not rise to the level of plain error.

error review, Smith must present us with substantial grounds to believe he has been a victim of manifest injustice. As the sentence imposed by the court is within the sentencing range, he fails to do so here.

In *State v. Noble*, 591 S.W.2d at 206, the court stated:

> "Even if the plain error rule is applicable, to warrant relief under that rule the court must find that a manifest injustice has occurred. In the present case, however, the (fifty) year sentence received by the appellant was within the statutory limits ... Either the judge or the jury could assess such punishment. Appellant, therefore, cannot demonstrate prejudice resulting from the fact that the (judge) assessed punishment."

(quoting *State v. Campbell*, 543 S.W.2d 518, 520 (Mo.App.1976)). Here, the court sentenced Smith to twelve years imprisonment, which was within the sentencing parameters. Thus, like the appellant in *Noble*, Smith cannot demonstrate that prejudice or manifest injustice resulted from the fact that the judge, as opposed to the jury, assessed punishment.

Lastly, Smith argues that even if the court did not err in giving the jury Instruction 18, the court did err when it told the jury that it would have thirty more minutes to deliberate before the court might take over and fix a punishment. We disagree.

The record reflects that the jury was already at an impasse when the court encouraged the jury, via Instruction 18, to deliberate Smith's sentence further. The instruction informed the jury that the court would fix the punishment if the jury could not. While the court designated a time to assess the jury's progress, the jury returned thirty minutes prior to the expiration of that time indicating an inability to agree on a punishment. Thus, there is no indication that the jury was pressured by a time constraint such that it prematurely abdicated its duty to impose punishment. Hence, although "oral communications to the jury are to be undertaken with caution," *Noble*, 591 S.W.2d at 205, Smith fails to prove that the court's imposition of a time at which to assess the jury's progress influenced the jury's inability to agree on something. We find that, the circuit court did not plainly err either in giving jury Instruction 18 or in telling the jury that it would give them thirty more minutes to deliberate before the court might take over sentencing, as Smith has failed to prove prejudice or that he has been a victim of manifest injustice. Point three is denied.

### Court's Sentencing Decision

■ In his last point on appeal, Smith argues that the circuit court abused its discretion when it considered Smith's failure to admit his guilt in the presentence investigation and at sentencing. He contends that the court's comments regarding Smith's failure to admit guilt show that the court considered that fact in determining his sentence. We disagree.

■ "A trial court's sentencing decision is reviewed for abuse of discretion." *State v. Palmer*, 193 S.W.3d 854, 857 (Mo. App.2006). "An abuse of discretion occurs when the trial court's action is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful consideration." *Id.* at 857–58.

■ "A judge is charged with the responsibility of imposing a punishment that fits both the offense and the offender." *State v. Lindsey*, 996 S.W.2d 577, 580 (Mo.App.1999). In determining the appropriate sentence, the sentencing court should consider "all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant ..." § 557.036.1, RSMo 2000. The court may

also "take into account the character of the defendant, including his attitude concerning the offense." *Lindsey*, 996 S.W.2d at 580.

Before announcing Smith's sentence, the court stated it was "concerned with the fact that [Smith has] never taken responsibility for what the Court considers to be a very serious crime." This statement may be construed as the court considering Smith's attitude towards possession of child pornography. As the record reflects, Smith admitted to possessing child pornography. Yet, the record also supports that Smith has refused to acknowledge that his actions were inappropriate.

▉ Smith does have, however, a constitutional right not to admit to guilt to a crime he is charged with or convicted of. *State ex rel Munn v. McKelvey*, 733 S.W.2d 765, 768 (Mo. banc 1987). However, "a trial court does not err in sentencing when it considers other factors aside from a defendant's assertion of his or her constitutional right, so that a comment on the defendant's assertion of rights is not the determinative factor in imposing sentence." *Palmer*, 193 S.W.3d at 857. Here, it is clear from the record that the determinative factor for sentencing was the seriousness of the child pornography offense. The court stated:

> Why it's a serious offense is because the photographs are vile. And when you have children involved ... these were reprehensible to have on your computer ... [T]his offense, in my opinion, is such a serious offense that Probation and Parole, and despite their report that applies to mitigating, the Court is not going to follow that. The Court believes that this is such a serious offense that probation is not appropriate in this case.

The court's repetitive use and context of "serious offense" shows that the seriousness of the possession of child pornography was the determining factor in sentencing Smith to twelve years imprisonment—which was within the sentencing parameters for a class B felony and less time than recommended by the State. Therefore, the circuit court did not abuse its discretion when it referenced Smith's failure to take responsibility for his actions in determining his sentence because it was not the determinative factor the court used in deciding Smith's sentence. Point four is denied.

### Conclusion

We conclude, therefore, that even if the circuit court erred in overruling Smith's objection to the State's misstatement of the law in the State's closing argument, the error was not prejudicial. Further, the circuit court did not clearly err by failing to sua sponte reject McGuire's testimony, which classified the twenty-one images as child pornography, as Smith has failed to prove that the testimony invaded the province of the jury. Additionally, the circuit court did not clearly err in giving jury Instruction 18 with additional comments as Smith has failed to prove prejudice. Lastly, we conclude that the circuit court did not abuse its discretion when it noted Smith's failure to take responsibility for his actions when it determined his sentence. The record reflects that this was not the determinative factor the court used in imposing Smith's sentence. We affirm the circuit court's judgment.

All concur.