

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) WD78345 |
| | ) |
| v. | ) OPINION FILED: July 12, 2016 |
| | ) |
| CHAD DANIEL TERRY JR., | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable James F. Kanatzar, Judge

Before Special Division: Zel M. Fischer, Special Judge, Presiding, Mark D. Pfeiffer, Judge and Gary D. Witt, Judge

Appellant Chad Terry ("Terry") was charged in Jackson County Circuit Court with first degree murder and armed criminal action for the murder of Erik Schwartz. Following a jury trial, Terry was found guilty of the charges and sentenced to life imprisonment without the possibility of parole for the murder charge and life imprisonment for armed criminal action, with the sentences to run concurrently. Terry raises five points of error on appeal. We affirm.

## Procedural and Factual Background

On the evening of October 29, 2013, Erik Schwartz ("Schwartz") was in the process of moving into his mother's residence in Independence, Missouri. He spent the evening unloading his belongings from his SUV. At approximately 1:00 a.m. on October 30th, Schwartz's mother went outside her home and asked Schwartz to turn off his SUV and come into the house. Schwartz responded that he would do so momentarily. His mother went inside and went to sleep.

Also, on October 29, 2013, Terry and his friends Charles Carr ("Carr") and Jamie Lamont ("Lamont") took methamphetamine and ingested GHB[1]. At approximately 10:00 or 11:00 p.m., the three began to drive around looking for a car to steal. They drove past Schwartz and saw him sleeping in his SUV.

Terry and Carr parked their car around the corner and walked towards Schwartz's SUV, intending to rob him. When they arrived, Schwartz was standing outside his vehicle. The three began arguing. Terry pointed a gun at Schwartz, and Carr patted down Schwartz to see if he had any valuables in his pockets. Terry then hit Schwartz with the butt of his gun. Terry hit him a second time with the gun, and Schwartz fell to the ground. While Schwartz was on the ground, Terry shot him in the head.[2] Terry and Carr briefly argued at the scene. They then ran to their vehicle and drove to another friend's house.

---

[1] Gamma-Hydoxybutyric Acid, used illegally as an intoxicant.
[2] The distance from which Schwartz was shot varies in the testimony. At different times, Terry testified that he shot him from a distance of two inches to one foot. The pathologist testified that the evidence indicated a range of more than three feet, although the presence of a hat could have impacted the analysis by limiting the presence of gunshot residue and stippling. Thus, it is possible that Schwartz was shot from a closer range.

Terry was arrested on October 31 and held in the detention center at the Independence Police Department. When he was first arrested, officers read him his *Miranda*[3] rights, and Terry informed detectives that he did not wish to answer questions without his lawyer present. Carr was arrested on November 2 and implicated Terry in the murder. Once Carr implicated Terry, Terry was formally charged with murder. Officer Tracey Schmidli ("Officer Schmidli") from the Independence Police Department went to Terry's cell and informed him that he was being charged with Schwartz's murder. Officer Schmidli testified that, in response to her statement, Terry requested to speak with the detectives who had arrested him, Detectives Terry Schmidli[4] ("Detective Schmidli") and Kenneth Royster. Terry then had what Officer Schmidli described as a "tantrum," screaming and crying. Officer Schmidli ordered him to calm down, but Terry refused to stop. Officer Schmidli testified that Terry was put in a restraint chair until the detectives arrived.

When the detectives arrived, they removed Terry from the chair, reminded him of his prior assertion of his rights, and again read him his *Miranda* rights. Terry stated that he wished to waive his rights, signed the *Miranda* Waiver Form, and gave a full confession to the murder.

A jury found Terry guilty of murder in the first degree and armed criminal action. He now appeals, raising five points of error.

---

[3] 384 U.S. 436 (1966).
[4] Officer Schmidli and Detective Schmidli are siblings.

## Analysis

## I.

In his first point on appeal, Terry alleges that the trial court erred in overruling the defense's motions for acquittal because there was insufficient evidence to find Terry guilty of murder in the first degree because the State failed to prove that Terry deliberated before shooting Schwartz.

## Standard of Review

Where sufficiency of the evidence is in question, this Court's review "is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of guilt beyond a reasonable doubt." *State v. Bateman*, 318 S.W.3d 681, 686-87 (Mo. banc 2010).

> The crime of first degree murder consists of three elements: (1) knowingly (2) causing the death of another person (3) after deliberation upon the matter. [*State v. Johns*, 34 S.W.3d 93, 110 (Mo. banc 2000).] Section 565.002(3) defines the intent element of deliberation as "cool reflection for any length of time no matter how brief." The element of deliberation may be proven from the circumstances surrounding the crime. [*State v. Ferguson*, 20 S.W.3d 485, 497 (Mo. banc 2000).] Absent evidence of deliberation, an intentional killing is second-degree murder. [*State v. Cole*, 71 S.W.3d 163, 169 (Mo. banc 2002).]

*State v. Tisius*, 92 S.W.3d 751, 764 (Mo. banc 2002). "Deliberation is not a question of time--an instant is sufficient--and the reference to 'cool reflection' does not require that the defendant be detached or disinterested." *State v. Nathan*, 404 S.W.3d 253, 266 (Mo. banc 2013). "Instead, the element of deliberation serves to ensure that the jury believes the defendant acted deliberately, consciously and not reflexively." *Id.*

4

## Discussion

There were multiple facts upon which the jury could have relied to find that Terry had deliberated before murdering Schwartz. Terry arrived at the scene with a gun in hand. *See State v. Johns*, 34 S.W.3d 93, 110 (Mo. banc 2000) (bringing gun to crime scene supported jury's finding that defendant had deliberated). Terry approached Schwartz to hit him twice with his gun, knocking him to the ground and then shot him after the robbery. *See State v. Clemmons*, 753 S.W.2d 901, 906 (Mo. banc 1988) (facts gave rise "to the reasonable inference that defendant reflected for at least the time it took to reach [the victim] before striking him.") The second blow from hitting him with the gun, knocked Schwartz to the ground, incapacitating him. *See State v. Strong*, 142 S.W.3d 702, 717 (Mo. banc 2004) ("Deliberation may be inferred when there are multiple wounds or repeated blows"); *Tisius*, 92 S.W.3d at 764 (same). After the attack, Terry and Carr fled the scene. *See State v. Donahue*, 280 S.W.3d 700, 704 (Mo. App. W.D. 2009) (deliberation can be inferred from the defendant's flight); *Strong*, 142 S.W.3d at 717 ("[F]ailure to seek medical help for a victim strengthens the inference that the defendant deliberated"). Any one of these facts would be sufficient evidence upon which the jury could find deliberation. Even further, assuming the jury believed that Terry shot Schwartz from the distance of a few inches--a fact upon which there was conflicting evidence--there is yet another basis for finding deliberation. *See Tisius*, 92 S.W.3d at 764 (repeated shooting at close-range supported finding of deliberation); *State v. Branch*, 757 S.W.2d 595, 598 (Mo. App. E.D. 1988) (shooting at close range was some evidence of deliberation).

5

As the State notes, it appears that, in addition to claiming insufficient evidence of deliberation, Terry is raising a claim that the State improperly represented to the jury the time necessary to prove deliberation. During closing arguments, the prosecutor snapped his fingers to demonstrate the time necessary for deliberation. Terry argues that such a representation is of an "instantaneous" action. We disagree.[5] "The shortness of time for deliberating and premeditating killing is immaterial for purposes of proving murder in the first degree." *State v. Hudson*, 154 S.W.3d 426, 429 (Mo. App. S.D. 2005). Deliberation only requires a "brief moment of 'cool reflection.'" *Cole*, 71 S.W.3d at 169. In this case, Terry had not only a brief moment but a matter of minutes to decide to abandon the attack. He had multiple opportunities to abandon the robbery turned murder. He injured Schwartz, knocking him to the ground and incapacitating him, *before* he chose to shoot him directly in the head.

There was sufficient evidence for a jury to determine that Terry deliberated prior to shooting Schwartz. The trial court did not err in overruling defense counsel's motion for judgment of acquittal on this basis.

## II.

Terry's second point on appeal alleges that the trial court erred in admitting Terry's confession because it had been illegally obtained after Terry invoked his right to counsel.

---

[5] This argument is not raised in the point relied on and therefore is not properly before the court. *Dep't of Soc. Servs. v. Peace of Mind Adult Care Ctr.*, 377 S.W.3d 631, 642 n.14 (Mo. App. W.D. 2012). *Ex gracia*, we will briefly address the argument.

## Standard of Review

> Our review of the trial court's ruling on a motion to suppress evidence is limited to a determination of whether the evidence was sufficient to support the trial court's ruling. *State v. Haslett,* 283 S.W.3d 769, 783 (Mo.App.S.D.2009). We will affirm the trial court's ruling on a motion to suppress unless the ruling was clearly erroneous. *State v. Harris,* 305 S.W.3d 482, 485 (Mo.App.E.D.2010). The ruling is clearly erroneous only if we are left with a "definite and firm belief a mistake has been made." *State v. Wilson,* 169 S.W.3d 870, 875 (Mo.App.W.D.2005), *quoting State v. Hoyt,* 75 S.W.3d 879, 882 (Mo.App.W.D.2002). We will not reverse the ruling if it was plausible in light of the record viewed in its entirety even if we would have weighed the evidence differently. *Harris,* 305 S.W.3d at 485. We will consider all evidence presented at trial as well as evidence presented at a pre-trial hearing on the motion to suppress. *Haslett,* 283 S.W.3d at 783. "At trial, the State has the burden of production and persuasion to show by a preponderance of the evidence that a defendant's motion to suppress should be overruled." *Harris,* 305 S.W.3d at 485. When "the issue to be decided involves the constitutional protection against forced self-incrimination, our review of the trial court's ruling is a two-part inquiry: we defer to the trial court's determinations of witness credibility and findings of fact, but consider the court's conclusions of law *de novo.*" *State v. Tally,* 153 S.W.3d 888, 892 (Mo.App.S.D.2005).

*State v. Norman*, 431 S.W.3d 563, 568-69 (Mo. App. E.D. 2014). "The first step is to determine whether the defendant invoked his right to counsel by making an unambiguous and specific request for counsel in dealing with a custodial interrogation." *Id.* at 569 (internal quotations omitted). "If an accused has invoked his right to counsel and further communications, exchanges, or conversations with police occur, our next step is to determine whether he knowingly, voluntarily, and intelligently waived the previously invoked right to counsel by initiating further communication." *Id.*

## Discussion

Following Terry's arrest, he was taken to the Independence Police Department's detention center. Terry was read his *Miranda* rights. Detectives contacted him at the

7

detention center; Terry refused to leave his cell and requested to speak with an attorney. Terry clearly invoked his right to counsel and his right to remain silent. The detectives did not ask him any further questions.

After Carr gave police a statement implicating Terry, formal charges were filed against Terry. Officer Schmidli went to Terry's cell and read him the charges, consistent with the policy of the police department. She did not ask him any questions. Terry volunteered that he wished to speak with the detectives without his attorney present. After Terry requested to speak with the detectives, but before the detectives arrived, Terry became upset and had what Officer Schmidli described as a tantrum. Officer Schmidli attempted to calm him using verbal methods, but Terry refused to calm down. Eventually, Officer Schmidli ordered Terry to be placed in a restraint chair.

Detectives Schmidli and Royster arrived and took Terry out of the restraint chair and placed him in an interrogation room. Before doing so, they reminded Terry that he had previously refused to speak to them and had requested an attorney. They then asked Terry if he still wished to speak with them without an attorney present. He confirmed his waiver of his rights and signed a *Miranda* Waiver Form.

The parties agree that Terry adequately invoked his right to an attorney when the detectives first spoke with him. He later, however, voluntarily stated that he wished to speak with the detectives without his attorney. When reminded of his earlier statements, he confirmed that he was willingly waiving his rights.

On appeal, Terry argues that his waiver was not voluntary because Officer Schmidli's reading of the formal charges amounted to questioning. Terry's only support

8

for his argument that reading formal charges amounted to questioning is reliance on a Tennessee Supreme Court case, *State v. Sawyer*, 156 S.W.3d 531 (Tenn. 2005). In *Sawyer*, the court found that, in that case, reading the warrant and affidavit to the defendant was the functional equivalent of interrogation. *Id.* at 534-35. Terry ignores, however, the fact that Sawyer was in custody for thirty minutes at the station after his arrest, sitting across from an officer, during which time he was never read his *Miranda* rights. *Id.* at 535. The court specifically noted that "the facts and circumstances in this case go beyond merely reading the arrest warrant or otherwise informing the defendant of the charge." *Id.* Instead, the officer read not only the charge but specific, factual details of the allegation. *Id.*

The Eastern District recently addressed a case similar to *Sawyer*, *State v. Bell*, No. ED102752, 2016 WL 2341906 (Mo. App. E.D. May 3, 2016). In *Bell*, the defendant invoked his *Miranda* rights when first questioned by officers. Officers, however, continued a lengthy conversation "far beyond simply reading facts" necessary to keep him apprised of the investigation. *Id.* at *10. Bell was taken from his cell to an interview room where officers made "numerous pleas to Bell's conscience in a deliberate attempt to coax Bell into waiving his right to counsel." *Id.* (footnote omitted). The court held that "[t]he detectives' numerous appeal to Bell's conscience, made in an interrogation room and after detailing the evidence against Bell, were the functional equivalent of express questioning." *Id.*

Here, there is no indication that the reading of the charges was anything more than that or that it was done with the intent of obtaining a waiver of his rights. Officer

9

Schmidli read to Terry the charges against him, not the more detailed probable cause statement. Terry had already been made aware of his rights and he had invoked them. The reading of the charges called for no response. "The police are not required to cut off all contact with a suspect once he or she invokes his or her rights." *State v. Cook*, 67 S.W.3d 718, 722 (Mo. App. S.D. 2002). Words or actions which are normally attendant to an arrest or custody, that police have no reason to believe will elicit an incriminating response, are not considered interrogation. *State v. Bucklew*, 973 S.W.2d 83, 88 (Mo. banc 1998). In requesting to speak with the detectives, Terry knew he was voluntarily waiving his right to have an attorney. *Sawyer* and *Bell* are wholly inapplicable.

There is no support in Missouri case law that being informed of pending charges is, in and of itself, tantamount to an interrogation. The trial court did not err in admitting Terry's confession into evidence.

### III.

Terry's third point on appeal again contends that the trial court erred in admitting his confession because his restraint in a chair immediately prior to his confession rendered his statement involuntary.

### Standard of Review

Our standard of review is the same as that in point two. We will defer to the trial court on factual findings and issues of credibility but will examine legal questions *de novo*. *Norman*, 431 S.W.3d at 568-69.

**Discussion**

As noted above, Terry requested to speak with the detectives *before* being placed in the restraint chair. The police did not threaten him with the chair in exchange for a confession or a waiver of his rights. Terry highlights that, after being released from the restraint chair, he was taken, handcuffed and shackled, to an interrogation room. As Detective Schmidli took the handcuffs off Terry, the detective told Terry, "as long as you are cooperative, I won't handcuff you, but if you get out of control, this interview is over." There is nothing coercive about this statement. It was reasonable to inform Terry that he could remain un-cuffed so long as he remained under control because, shortly before, Terry had to be restrained for "tantrum-like" behavior.

It is a reasonable factual interpretation to believe that this statement was only in reference to Terry's previous behavior and was not an offer in exchange for a confession. Terry cites to no case law that supports his contention that a "threat" to return a prisoner to handcuffs or other restraints if he does not maintain composure is coercive in nature. In his brief, Terry relies primarily on the finding in *State ex rel. Clemons v. Larkins* that a coerced confession is inadmissible. 475 S.W.3d 60 (Mo. banc 2015). In *Clemons*, the police physically beat the defendant to extract a confession. *Id.* at 67. In this case, there was no physical violence or even a threat of physical violence. The alleged "coercive" act of which Terry complains is a detective's statement warning that if *Terry* became violent, the detectives would be forced to re-cuff him. This is not coercive. Even "[p]rotective isolation, absent evidence of violence, threats, or repeated interrogations, is

11

not an inherently coercive environment." *State v. Curry*, 714 S.W.2d 798, 800 (Mo. App. E.D. 1986).

The trial court did not err in finding that Terry's confession was voluntary and denying defense's motion to exclude such testimony.

**IV**

Terry's fourth point on appeal argues that the trial court erred in denying his motion for mistrial after two jurors saw Terry shackled and in an orange jumpsuit in the hallway of the courthouse.

**Standard of Review**

"[The] standard of review for a trial court's refusal to grant a mistrial is abuse of discretion." *State v. McGowan*, 184 S.W.3d 607, 610 (Mo. App. E.D. 2006). "This is because the trial court has observed the complained of incident and is in a better position than an appellate court to determine what prejudicial effect, if any, the alleged error had on the jury." *Id.* "We will find that a trial court abused its discretion when its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration." *Id.*

**Discussion**

There is no dispute that Terry had the right to appear without shackles in front of the jury unless there was good cause for his restraint. *See State v. Sanders*, 903 S.W.2d 234, 238-39 (Mo. App. E.D. 1995). However, "a brief, inadvertent exposure of the jury to a handcuffed defendant while defendant is being escorted from one place to another

12

does not deprive defendant of a fair trial." *Id.* at 239. It is a "normal and regular, as well as a highly desirable and necessary, practice to handcuff prisoners when they are being taken from one place to another, and the jury is aware of this." *State v. Snowden*, 285 S.W.3d 810, 815 (Mo. App. S.D. 2009).

Although this Court and the State allow that such a glimpse of a defendant in shackles should be avoided, such an inadvertent glimpse, while a defendant is handcuffed for the safety of those in the courthouse, does not rise to the level of requiring a mistrial. "A mistrial is a drastic remedy that should be granted only in extraordinary circumstances." *State v. Smith*, 934 S.W.2d 318, 320 (Mo. App. W.D. 1996). Missouri courts have previously held that, without evidence that a jury member actually saw the defendant in shackles or handcuffs, there are no grounds for a mistrial. *See Snowden*, 285 S.W.3d at 815; *State v. Merrick*, 257 S.W.3d 676, 680 (Mo. App. S.D. 2008).

In this case, the only indication that jury members saw the defendant in handcuffs was Terry's report to his attorney that, before the second morning of trial, two jurors witnessed him being escorted into court with one of the jurors making eye contact. The jurors were not asked if they had actually seen Terry, nor was Terry called upon to identify which jurors he alleges saw him. We find that, absent any evidence to show that the encounter took place, the trial court did not err in denying a mistrial. Further, even if a viewing did occur, it was brief and there was no allegation that it was intentional by the officers, and it took place only because of a valid safety concern to have those in the courthouse protected from defendants while defendants are being escorted through the courthouse.

13

While this is a situation which should be avoided, we do not find that the trial court abused its discretion in refusing to declare a mistrial because two members of the jury may possibly have briefly seen Terry shackled and in prison clothes while being escorted through the courthouse.

**V.**

Terry's final point on appeal contends that the trial court erred in overruling the defense's objection to the State's closing argument which allegedly referenced Terry's decision not to testify at trial.

**Standard of Review**

"A trial court maintains broad discretion in the control of closing arguments." *State v. Smith*, 422 S.W.3d 411, 415 (Mo. App. W.D. 2013). This Court reviews such rulings for abuse of discretion. *Id.* "Unless that discretion has been clearly abused to the prejudice of the accused, the trial court's ruling should not be disturbed on appeal." *Id.* "Even if a trial court is found to have abused its discretion by allowing improper closing argument, to warrant reversal of a conviction, the defendant also must establish that such abuse prejudiced him or her." *Id.* "To establish prejudice, the defendant must show that there is a reasonable probability that, in the absence of the trial court's abuse, the verdict would have been different." *Id.*

**Discussion**

Terry contends that the State impermissibly referred to his decision not to testify in his own defense during closing argument by stating:

14

Charles Carr is the one who did this, right? No. No. You never heard that. You never heard that until he said it, because he sure didn't say it, and he's in first. Charles Carr wasn't arrested until two days later.

Terry argues that the reference "he sure didn't say it" was a reference to his failure to testify. When the defense objected to the statement, the prosecutor responded that he was speaking about Terry's statement to police, and the trial court stated "that's the way I took it as well." The reference is clear when the prosecutor continued his closing. The statement immediately following the above reference was: "Never once in that statement to the police did he say I didn't do this, Charles Carr did it."

We need not enter into a discussion about whether the trial court abused its discretion in not granting a mistrial because it is clear from the record that there was no impermissible statement on the part of the prosecution. The trial court believed the State's comment was a reference to the statements Terry gave to police, and the State made this clear to the jury.

The trial court did not err in overruling defense counsel's objection to State's closing argument.

## Conclusion

For the reasons set forth fully above, we affirm.

_____
Gary D. Witt, Judge

All concur

15