

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD81514 |
| | ) | |
| v. | ) | OPINION FILED: June 28, 2019 |
| | ) | |
| DUSTIN DEMONT BROWN, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Randolph County, Missouri**
The Honorable Cynthia A. Suter, Judge

Before Division Two: Thomas N. Chapman, Presiding Judge, Mark D. Pfeiffer, Judge
and Cynthia L. Martin, Judge

Dustin Demont Brown ("Brown") appeals his conviction of the class A

misdemeanor of assault in the third degree pursuant to section 565.070.[1]  Brown alleges

that the trial court committed error when it permitted the State during closing argument to

read and display a statute addressing the crime of resisting arrest pursuant to section

575.150, and to read from appellate cases describing the physical force required to resist

---

[1]All statutory references are to RSMo 2000 as supplemented by revisions effective as of August 22, 2015, the date of Brown's alleged offenses, except as otherwise expressly noted.

arrest, because in doing so, the State improperly instructed on the law and misled the jury. Although the State's references during closing argument to statutory and decisional law relating to the crime of resisting arrest pursuant to section 575.150 was erroneous, the error did not prejudicially effect Brown's conviction for misdemeanor assault in the third degree pursuant to section 565.070. We therefore affirm.

## Factual and Procedural Background

On August 22, 2015, Brown was involved in an altercation outside of a night club in Moberly, Missouri. Brown was observed kicking one of the night club employees, Robert Harrington ("Harrington"), in the head. Harrington had been attempting to intervene in the altercation.

As officers arrived, Brown was seen leaving the scene in a Cadillac Escalade. The vehicle did not stop when instructed to do so by officers, and a pursuit of the vehicle commenced. The vehicle was stopped by Officer Andrew Jones ("Officer Jones") shortly thereafter. Because the vehicle was occupied by several people, Officer Jason Ward ("Officer Ward") arrived at the scene as backup.

A person in the vehicle was ordered to exit, and was arrested. Although Brown had been instructed to remain in the vehicle, he exited the vehicle and approached Officers Jones and Ward in a verbally aggressive manner. Brown had previously been yelling at the officers from inside the vehicle. Officer Jones advised Brown that he was under arrest. He took hold of Brown's left arm while Officer Ward took hold of Brown's right arm, with the intent of pulling Brown's arms behind his back to place him in handcuffs. Brown tried to pull away from the officers, and to pull his arms to the front of his body. The officers

2

had to use force to restrain Brown, and to handcuff him with his arms behind his back. During the struggle, Officer Jones received a small cut and abrasions to his left hand.

Brown was charged by amended information with: (i) the class A misdemeanor of resisting arrest pursuant to section 575.150 (Count I); (ii) the class A misdemeanor of assault of a law enforcement officer in the third degree pursuant to section 565.083[2] (Count II); and (iii) the class A misdemeanor of assault in the third degree under section 565.070[3] in connection with the assault on Harrington (Count III). Following a jury trial, Brown was acquitted on Count II (assault of a law enforcement officer), and was convicted on Counts I and III.

Brown received a suspended imposition of sentence on Count I, the charge of resisting arrest. That conviction is therefore not final for purposes of appeal, and is not the subject of this appeal.[4] Brown received a suspended execution of sentence on Count III, the charge of misdemeanor assault on the bar employee, Harrington. Brown's appeal challenges his conviction on Count III. Brown claims that the State's discussion during closing argument about a statute and decisional law applicable to Count I prejudicially resulted in his conviction on Count III.

The jury was instructed on Count I, the resisting arrest charge, by Instruction No. 8, the verdict director submitted by the State:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

---

[2]Section 565.083 was repealed in 2014, effective January 1, 2017.
[3]Section 565.070 was transferred in 2014, effective January 1, 2017, to section 565.054.
[4]*See State v. Hotze*, 250 S.W.3d 745, 746 (Mo. App. E.D. 2008), citing *State v. Lynch*, 679 S.W.2d 858, 860 (Mo. banc 1984)).

3

First, that on August 22, 2015, in the County of Randolph, State of Missouri, Andrew Jones and Jason Ward were law enforcement officers, and

Second, that Andrew Jones and Jason Ward were attempting to making [sic] an arrest of defendant, and

Third, that defendant knew or reasonably should have known that law enforcement officers were making an arrest of defendant, and

Fourth, for the purpose of preventing the law enforcement officers from making the arrest, the defendant resisted by using physical force,

Then you will find the defendant guilty under Count I of resisting an arrest.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

The jury was also given Instruction No. 9, a converse instruction submitted by Brown as follows:

If you find and believe that the defendant's use of physical force, [sic] was not for the purpose of preventing the law enforcement officers from making an arrest, you must find the defendant not guilty under Count I of resisting arrest as submitted in Instruction No. ____.

Brown's converse instruction was consistent with his defense strategy at trial which emphasized that the State had to prove beyond a reasonable doubt that Brown's purpose in using physical force to resist was to prevent law enforcement officers from making an arrest. *See* section 575.150.1.

The jury was instructed on Count III, the misdemeanor assault charge, by Instruction No. 12, the verdict director submitted by the State:

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

4

That on or about August 22, 2015, in the County of Randolph, State of Missouri, the defendant attempted to cause physical injury to Robert Harrington by kicking him, then you will find the defendant guilty under Count III of assault in the third degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, a person attempts to cause physical injury when for the purpose of causing that result, he does an act which is a substantial step towards causing that result. A substantial step is conduct which is strongly corroborative of the firmness of the person's purpose to cause that result. (It is no defense that, under the circumstances, it was impossible to achieve that result, if such result could have been achieved had the circumstances been as the person believed them to be.)

After the jury was instructed, the State argued as follows during closing argument:

State: Count I is resisting arrest. What is resisting arrest? Let's take a look at the statute. This is the statute that was in place at the time in 2015: A person commits the crime of resisting arrest, detention or stop if, knowing that a law enforcement officer is making an arrest or attempting to lawfully detain or stop an individual or a vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully --

Brown's Counsel: Your Honor, may we approach?

The Court: You may.

(At this time counsel approached the bench, and the following proceedings were had:)

Brown's Counsel: What bothers me right now is we've now had you instruct them and now, all of a sudden, we're talking about what --

State: I'm going to go over the instruction.

5

Brown's Counsel:   I know, but you're putting something up as authoritative before the Court -- or before the jury, and I don't believe that's appropriate.

The Court:   So you're objecting to her showing the statute?

Brown's Counsel:   Yeah. The statute shouldn't be --

State:   I have every right to read the statute, and -- I've read it every trial I have.

Brown's Counsel:   Well, whether you do it in every trial or not, it supplants -- the record that I want to make is that it supplants the instructions that the Court has made, and I do not feel it's appropriate.

The Court:   I'll overrule the objection.

(Proceedings returned to open court.)

State:   All right. This gives you the definition of resisting arrest. We're going to talk about the elements of that crime here in a minute, but -- but what I really want to point out to you at this particular point in time is this, this paragraph No. 4: It is no defense to a prosecution pursuant to this section that the law enforcement officer was acting unlawfully in making the -- in the arrest. However, nothing in this section shall be construed to bar civil suits for unlawful arrest.

I read that to you not because I'm trying to suggest that Andrew Jones or Jason Ward were -- was unlawfully making arrest. In fact, in a minute here, I'm going to argue to you quite the opposite. However, the defense, in their opening argument, tried to paint a picture that this just was chaos and that it was a misunderstanding, and if someone had just listened, so on and so forth -- I'm going to talk about that in a minute, too -- maybe this would have been different. That's no defense.

If a -- if a law enforcement officer is making an arrest, a defendant, an individual cannot resist that arrest. There may be other actions, if the officer's actions are

6

> unlawful, illegal, harassing, something that's not what we're discussing today, there may be another time or place for actions against that officer. But I point that out just based on some of the argument or some of the statements that you've already heard.

[Tr. pp. 109-111]

The State's closing argument continued with a discussion of the essential elements of the crime of resisting arrest as posited by the verdict director for Count I. When the State referred the jury to paragraph Fourth of the verdict director -- the paragraph conversed by Brown's tendered instruction -- the State seized on the phrase "physical force," a term that was not defined in the jury instructions. The State began referring to reported appellate decisions addressing whether specific actions by a defendant constituted "physical force." Brown timely objected, noting that the State's reference to holdings in reported appellate decisions about whether a defendant's actions constituted physical force "supplant[s] the Court's instructions regarding the law." [Tr. p. 112] The trial court overruled the objection. The State then identified several appellate decisions by case name, and referred to the holdings in those cases to argue that "exerting the strength and power of [the defendant's] bodily muscles to overcome the officer's attempts to pull him from the car," and the use of "stiffened [] arms when officers attempted to put [the defendant] into handcuffs," were sufficient to constitute physical force. [Tr. p. 112] The State also referred to one appellate decision for the proposition that "physical force" includes nonviolent force. [Tr. p. 112]

In discussing Counts II and III during closing argument, the State did not refer to any external sources to discuss the law, and instead referred only to the jury instructions.

7

Following his convictions on Counts I and III, Brown filed a motion for new trial. He alleged in the motion for new trial that the trial court erred in permitting the State to read and display section 575.150 to the jury, and in allowing the State to refer to holdings from reported appellate cases to discuss whether evidence established "physical force." The motion for new trial argued that this error prejudicially resulted in Brown's conviction on Count I. The motion for new trial did not argue that the State's erroneous closing argument prejudicially resulted in Brown's conviction on Count III.

The motion for new trial was denied. This appeal followed.[5]

## Analysis

Brown raises two points on appeal. First, Brown argues that the trial court abused its discretion in permitting the State, over Brown's objection, to read and display section 575.150 to the jury during closing argument because in doing so, the State "improperly supplanted the trial court's instructions on the law and misled the jury about the relevant issues in the case." [Appellant's Brief, p. 10] Second, Brown argues that the trial court abused its discretion in permitting the State, over Brown's objection, to read during closing argument from reported appellate decisions addressing conduct deemed sufficient to establish physical force necessary to resist arrest because in doing so, the State "supplanted the trial court's instructions on the law, misled the jury about the relevant issues in the case, encouraged the jury to abandon their duties to assess the credibility of the evidence before

---

[5]Brown was granted leave of court to file his appeal out of time.

8

them and decide what the facts are, and improperly lowered the burden of proof for the State." [Appellant's Brief, p. 15]

Neither of Brown's points on appeal refer to his conviction on Count III. In the argument portion of his Brief, however, Brown argues with respect to point one that we "should have no confidence that the guilty verdict for [Brown's] third degree assault charge was [not] tainted by the improper argumentation, and only secured as a result of the improper argument." [Appellant's Brief, p. 14] Brown argues with respect to point two that we "cannot be sure the jury's guilty verdict for the offense of third degree assault wasn't tainted," because we cannot be sure that "the prosecutor's exhortations to the jury to disregard the approved instructions regarding the correct burden of proof for the offense of resisting arrest didn't also encourage the jury to similarly ignore the instructions for third degree assault." [Appellant's Brief, p. 19] We address the points together.

Brown's points on appeal, which seek reversal of his conviction on Count III, are not preserved for our review. "For an allegation of error to be considered preserved and to receive more than plain error review, it must be objected to during the trial *and* presented to the trial court in a motion for new trial." *State v. Walter*, 479 S.W.3d 118, 123 (Mo. banc 2016) (emphasis in original). Here, Brown objected at trial when the State discussed of external sources of law addressing the charge of resisting arrest. He arguably did so, however, in reference only to the charge of resisting arrest. Brown did not expressly contend at trial that the State's allegedly improper argument could prejudicially impact the jury's consideration of the charge of misdemeanor assault.

9

Even were we to generously construe Brown's trial objection as sufficient to preserve his claims of error on appeal relating to his conviction on Count III, Brown's motion for new trial plainly did not argue that his conviction on Count III was the prejudicial result of the State's improper closing argument. "[A]llegations of error in a jury-tried case must be included in a motion for new trial to be preserved for appellate review." *State v. Stephens*, 88 S.W.3d 876, 880 (Mo. App. W.D. 2002) (citing Rule 29.11(d)).

As a result, Brown's claim that his conviction on Count III for misdemeanor assault was the prejudicial result of the State's erroneous discussion of the law of resisting arrest during closing argument is at best eligible for plain error review. Rule 30.20. "[I]n the context of plain error review, we will reverse the trial court's denial of [an] appellant's motion for new trial only if we determine that its ruling was an obvious and clear abuse of discretion, which affected a substantial right of the appellant and resulted in manifest injustice or miscarriage of justice." *Stephens*, 88 S.W.3d at 881.

We agree with Brown that the trial court abused its discretion in permitting the State to advise the jury about the law of resisting arrest by reference to external sources other than the jury instructions. "'A trial court maintains broad discretion in the control of closing arguments.'" *State v. Smith*, 422 S.W.3d 411, 415 (Mo. App. W.D. 2013) (quoting *State v. Middleton*, 995 S.W.2d 443, 455 (Mo. banc), *cert denied*, 528 U.S. 1054 (1999)). The "'[t]rial court's rulings on objections to closing arguments are reviewed for abuse of discretion; however, when a proper objection is made, the trial courts should exclude 'statements that misrepresent the evidence or the law' or statements that 'tend to confuse

10

the jury.'" *Id*. (quoting *State v. Brightman*, 388 S.W.3d 192, 201 (Mo. App. W.D. 2012), itself quoting *State v. Deck*, 303 S.W.3d 527, 543 (Mo. banc 2010)).

It is settled in this state that "the jury is to obtain the law only from approved jury instructions." *Eckelkamp v. Burlington Northern Santa Fe Ry. Co.*, 298 S.W.3d 546, 552 (Mo. App. E.D. 2009) (citation omitted). "A jury instruction is a 'direction given by the judge to the jury concerning the law of the case.'" *State v. Storey*, 901 S.W.2d 886, 892 (Mo. banc 1995) (quoting *Black's Law Dictionary* 856 (6th ed. 1990)). "Instructing the jury as to the law is a prerogative of the court, which may not be usurped by counsel in jury argument." *Nicholls v. Kammerich*, 626 S.W.2d 653, 659 (Mo. App. W.D. 1981) (citing *Stroh v. Johns*, 264 S.W.2d 304 (Mo. 1954) (other citations omitted)).

Thus, "it is not the prerogative of counsel to inform the jury as to the substantive law of the case." *State v. Holzwarth*, 520 S.W.2d 17, 22 (Mo. banc 1975) (citations omitted). That includes by reading or displaying statutes to a jury, or by reading from reported cases or law books. *See, e.g., State v. Watson*, 672 S.W.2d 701, 703 (Mo. App. E.D. 1984) ("It was improper for the prosecutor to read to the jury the statute."); *Holzwarth*, 520 S.W.2d at 22 ("[U]nder Missouri law, it is not the prerogative of counsel . . . to read [] statutes to the jury."); *Domijan v. Harp*, 340 S.W.2d 728, 734 (Mo. 1960) ("The introduction into evidence of domestic statutes (or law) is wholly improper."); *Lewis v. Barnes*, 220 S.W. 487, 489 (Mo. banc 1920) ("The reading to the jury of the mandate and opinion of this court in this case rendered upon the former appeal was clearly error.").

We thus conclude that the trial court's decision to permit the State to read the resisting arrest statute and from cases describing "physical force" for resisting arrest was

11

an obvious and clear abuse of discretion for purposes of plain error review. However, "'[e]ven if a trial court is found to have abused its discretion by allowing improper closing argument, to warrant reversal of a conviction, the defendant also must establish that such abuse prejudiced him or her.'" *Smith*, 422 S.W.3d at 415 (quoting *State v. Williams*, 24 S.W.3d 101, 124 (Mo. App. W.D. 2000)). Although "'the practice of reading statutes [or other law] to the jury is not to be commended, nevertheless, in the absence of a plain demonstration of abuse of discretion and prejudicial effect, it has not been held to be reversible error when permitted.'" *King v. Furry*, 317 S.W.2d 690, 693 (St. L. Ct. App. 1958) (quoting *Merrick v. Bridgeways, Inc.*, 241 S.W.2d 1015, 1019 (Mo. 1951) (other citations omitted)). *See also, Watson*, 672 S.W.2d at 703 (holding that where domestic statutes or law are read to the jury, "if counsel misstates the law or states it in a manner calculated to mislead the jury, reversible error is committed"); *Holzwarth*, 520 S.W.2d at 22 ("It is improper for counsel to argue questions of law not within the issues, or inconsistent with the instructions of the court.") (citations omitted). Thus, although reading statutes or other law sources to the jury "is a reprehensible practice, and its tendency, under ordinary circumstances, is to confuse rather than enlighten the jury . . ., appellate courts are loathe to reverse upon this ground alone, unless it appears that the jury was thereby misled or there is some other showing of prejudice to the opposite party." *Lewis*, 220 S.W. at 489. "'To establish prejudice, the defendant must show that there is a reasonable probability that, in the absence of the trial court's abuse, the verdict would have been different.'" *Smith*, 422 S.W.3d at 415 (quoting *Williams*, 24 S.W.3d at 124). Brown cannot sustain this burden

12

with respect to his conviction on Count III for misdemeanor assault in the third degree,[6] particularly applying plain error review, which requires Brown to establish a manifest injustice or miscarriage of justice. "[P]lain error can only serve as the basis for granting a new trial on direct appeal if the error was outcome determinative." *State v. Mendez-Ulloa*, 525 S.W.3d 585, 595 (Mo. App. E.D. 2017) (other citations omitted).

Brown summarily argues in his Brief that we should assume his conviction of misdemeanor assault in the third degree on Count III was tainted by the State's improper argument regarding the law applicable to Count I. Brown offers no logical or reasoned basis for this bare contention, however. The factual underpinning for Count I was substantially different from that for Count III. Count I involved Brown's interaction with officers after he fled the bar in a vehicle and was pursued. In sharp contrast, Count III involved Brown's physical assault on Herrington, a bar employee, in the bar's parking lot. In addition, there are no meaningful similarities between the verdict directors for Counts I and III. The verdict director for Count III does not use the phrase "physical force," includes a definition for the phrase "physical injury," and did not require any finding by the jury that would have been implicated by the State's discussion about the legality of an arrest as a defense. There is simply no reason to presume that the jury's conviction of Brown on Count III was influenced by the State's improper discussion of the law of resisting arrest during closing argument. Brown has not established that "'there is a reasonable probability

---

[6]Though the conviction on Count I for resisting arrest is not final for purposes of appeal, our conclusion with respect to established prejudice would almost certainly be different if that conviction was the proper subject of this appeal.

13

that, in the absence of the trial court's abuse, the verdict [on Count III] would have been different.'" *Smith*, 422 S.W.3d at 415 (quoting *Williams*, 24 S.W.3d at 124).

Thus, although it was error for the trial court to permit the State to argue the law of resisting arrest by reading a statute and referring to decisional law, Brown's conviction on Count III for misdemeanor assault in the third degree of Harrington, a bar employee, was not a prejudicial result of that error.

Points One and Two are denied.[7]

## Conclusion

The trial court's judgment of conviction and sentence on Count III, the class A misdemeanor of assault in the third degree pursuant to section 565.170, is affirmed.

_Cynthia L. Martin_____
Cynthia L. Martin, Judge

All concur

---

[7]It should nonetheless be abundantly clear that the prosecutor's self-proclaimed practice of reading statutes during closing argument in every case tried is not appropriate, notwithstanding the denial of Brown's points on appeal.