

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99620 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | 1211-CR00439-01 |
| | ) | |
| TERRANCE TERON NORMAN, | ) | Honorable Jon A. Cunningham |
| | ) | |
| Defendant/Appellant. | ) | FILED: May 20, 2014 |

### OPINION

Terrance Teron Norman (Defendant) appeals from the judgment and sentence upon his conviction following a jury trial of one count of first-degree robbery, in violation of Section 569.020.[1] The trial court sentenced Defendant to a term of twenty-five years' imprisonment and checked the box on the judgment form indicating that Defendant had been found beyond a reasonable doubt to be a dangerous offender, pursuant to Section 558.016. Defendant claims the trial court erred (1) in denying his motion to suppress statements and admitting at trial statements he made to the interrogating officer because he invoked his right to counsel and to remain silent; and (2) in sentencing him as a dangerous offender because the State never alleged nor presented evidence establishing beyond a reasonable doubt that he was a dangerous offender. We affirm as modified.

---

[1] All statutory references are to RSMo 2000, as amended, unless otherwise indicated.

<u>Factual and Procedural Background</u>

Defendant does not challenge the sufficiency of the evidence to uphold his convictions and sentence. Viewed in the light most favorable to the verdict, the evidence at trial established the following relevant facts:

On January 25, 2012, Defendant entered the backseat of Detective Juan Wilson's (Detective Wilson) vehicle. Detective Wilson was an undercover task force officer working with a confidential informant (Informant). The Informant had brokered a transaction between Detective Wilson and Defendant in which Defendant would sell to Detective Wilson a .40-caliber Smith and Wesson handgun in exchange for $450. Initially, Detective Wilson had offered to pay $600 for the handgun but later decided he would pay only $450. Detective Wilson, Informant, and a surveillance team waited for Defendant at an appointed location for the transaction to occur. Detective Wilson wore a wire and had a concealed video surveillance device to capture the interaction with Defendant, although part of the video surveillance device's view was occasionally obscured. When Defendant entered the vehicle, Detective Wilson handed him the $450. Defendant pulled out the handgun, then removed a gun magazine containing hollow point bullets from his pocket, inserted the magazine into the handgun, pointed the gun at Detective Wilson, and instructed Detective Wilson not to move. Defendant then exited the vehicle, got into the vehicle he had arrived in, and sped away. The surveillance team was unable to stop Defendant's vehicle, and a high-speed chase ensued. Defendant's vehicle got away. Later, police obtained an arrest warrant for Defendant and issued a media release to publicize Defendant's photograph. As a result, Defendant eventually turned himself in.

After Defendant turned himself in, Detective Donald Stepp conducted a videotaped interview of Defendant. While Detective Stepp was advising Defendant of his Miranda[2] rights, Defendant initially indicated that he was not going to make a statement. Subsequently, however, Defendant spontaneously made statements that he had not committed a robbery, "especially with a gun," but Defendant admitted to being at the crime scene during the robbery. Defendant also told Detective Stepp that he had gone to the location of the robbery to "meet and greet" Detective Wilson, not to rob him. Defendant stated that Detective Wilson had handed him the $450. Defendant did not say anything about selling a handgun and denied having a gun in his possession during the encounter with Detective Wilson. Defendant told Detective Stepp that telling a person "don't move" is a sign of a robbery, and Defendant gestured with his finger and hand as though he held a gun. Defendant also told Detective Stepp that Defendant thought he was going to prison for 20 years and that he was not ready to go. The State later charged Defendant by indictment with first-degree robbery, armed criminal action, and witness tampering.[3]

Prior to trial, Defendant filed a motion to suppress the statements he had made to Detective Stepp during the videotaped interview. Defendant's motion alleged that his interrogation by police did not cease when Defendant indicated that he wished to remain silent and that Defendant wanted to have appointed counsel present during the interrogation. At a hearing on the motion to suppress statements, Defendant, the State, and the trial court agreed to decide the merits of the motion based upon a review of the first 10 to 15 minutes of the videotaped interview. After viewing the agreed-upon segment of the videotape, the trial court denied Defendant's motion to suppress the statements on the grounds that (1) Defendant had

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).
[3] The State dismissed the charge of witness tampering prior to trial.

made a request for an attorney but then voluntarily reinitiated the conversation with police after being advised of his Constitutional rights; and (2) Detective Stepp did not coerce or place undue influence upon Defendant during the conversation.

At trial, Detective Wilson and Informant testified regarding the encounter with Defendant on January 25, 2012. The videotape of the incident was also shown to the jury. Detective Stepp testified regarding Defendant's statements during the interview. The State introduced the videotape of the interview, and Defendant renewed his objection to the evidence of his statements. The trial court overruled the objection, and the videotape was played for the jury.

Defendant also testified at trial. Defendant testified that he had conversed with Informant a day or two before the day of the robbery. Defendant testified that Informant had sent a text message to Defendant requesting a handgun. Defendant replied that he had a .40-caliber Smith and Wesson even though he actually did not have such a handgun. Defendant further testified that he and Informant also discussed a price. Informant initially offered to pay Defendant $600 for the handgun but later said he only had $450. Defendant told Informant that he would accept $450 but that Informant would owe Defendant $150. Defendant testified that he met Informant and Detective Wilson at the appointed location for the transaction but that he did not have a firearm when he entered Detective Wilson's vehicle. Defendant testified that Detective Wilson handed him the $450, that he counted the money, and that he placed it in his jacket pocket before saying "don't move." Defendant testified that he told Detective Wilson not to move because he was going back to his vehicle. Defendant admitted that, during his interview with Detective Stepp, he had mistakenly said that "don't move" is a sign of a robbery. Defendant testified that he was only trying to "fast talk" Detective Wilson into thinking Defendant had a handgun to sell and that he had planned to steal the money and run. Defendant testified that Detective Wilson

4

had lied about Defendant having a handgun and loading the magazine while Defendant was in Detective Wilson's vehicle.

After the close of all the evidence, the jury found Defendant guilty of first-degree robbery and not guilty of armed criminal action. The jury recommended that Defendant serve a sentence of 25 years' imprisonment. Defendant filed a motion for new trial alleging that the trial court erred in denying his motion to suppress statements. The trial court subsequently overruled Defendant's motion for new trial, sentenced Defendant in accord with the jury's recommendation, and indicated Defendant was a dangerous offender on the judgment form. This appeal followed.

Defendant's Invocation of His Right to Counsel

In his first point on appeal, Defendant claims the trial court erred in denying his motion to suppress statements made to Detective Stepp because the statements were made during a custodial interrogation after Defendant unequivocally invoked his rights to counsel and to remain silent and did not thereafter voluntarily reinitiate the conversation with the detective. We disagree.

Our review of the trial court's ruling on a motion to suppress evidence is limited to a determination of whether the evidence was sufficient to support the trial court's ruling. State v. Haslett, 283 S.W.3d 769, 783 (Mo. App. S.D. 2009). We will affirm the trial court's ruling on a motion to suppress unless the ruling was clearly erroneous. State v. Harris, 305 S.W.3d 482, 485 (Mo. App. E.D. 2010). The ruling is clearly erroneous only if we are left with a "definite and firm belief a mistake has been made." State v. Wilson, 169 S.W.3d 870, 875 (Mo. App. W.D. 2005), quoting State v. Hoyt, 75 S.W.3d 879, 882 (Mo. App. W.D. 2002). We will not reverse the ruling if it was plausible in light of the record viewed in its entirety even if we would have

weighed the evidence differently. Harris, 305 S.W.3d at 485. We will consider all evidence presented at trial as well as evidence presented at a pre-trial hearing on the motion to suppress. Haslett, 283 S.W.3d at 783. "At trial, the State has the burden of production and persuasion to show by a preponderance of the evidence that a defendant's motion to suppress should be overruled." Harris, 305 S.W.3d at 485. When "the issue to be decided involves the constitutional protection against forced self-incrimination, our review of the trial court's ruling is a two-part inquiry: we defer to the trial court's determinations of witness credibility and findings of fact, but consider the court's conclusions of law *de novo*." State v. Tally, 153 S.W.3d 888, 892 (Mo. App. S.D. 2005).

"To protect the privilege against self-incrimination guaranteed by the Fifth Amendment, the police must terminate their interrogation of an accused in custody if the accused requests the assistance of counsel." Harris, 305 S.W.3d at 485. The accused must make an objective, unambiguous, unequivocal, and specific request for counsel to invoke his Fifth Amendment right to counsel. Id. The desire to have counsel present must be sufficiently and clearly articulated so that a reasonable police officer under the circumstances would understand the statement to be a request for an attorney. Id. "The accused cannot be subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Id. Law enforcement officials may not restart interrogation without counsel present regardless of whether the accused has consulted with his attorney. Id. However, if the statement of a desire to have counsel present fails to meet the requisite level of clarity for police officers to understand it as a request for an attorney, the officers are not required to stop questioning the accused. Id.

"Determining whether the right to counsel has been violated during a custodial interrogation requires a two-step analysis." Haslett, 283 S.W.3d at 784, quoting State v. Lanos, 14 S.W.3d 90, 94 (Mo. App. E.D. 1999). The first step is to determine whether the defendant invoked his right to counsel by making an "unambiguous and specific request for counsel in dealing with a custodial interrogation." Haslett, 283 S.W.3d at 784. The question of whether an accused has invoked his right to counsel is objective, and he must articulate his desire to have counsel present "sufficiently clearly that a reasonable police officer in the circumstances, would understand the statement to be a request for an attorney." Id. If an accused has invoked his right to counsel and further communications, exchanges, or conversations with police occur, our next step is to determine whether he knowingly, voluntarily, and intelligently waived the previously invoked right to counsel by initiating further communication. Lanos, 14 S.W.3d at 94, citing Smith v. Illinois, 469 U.S. 91, 95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984).

Here, during Detective Stepp's videotaped interview of Defendant, the following transpired:

DETECTIVE STEPP: Has anybody ever read your rights to you before?

DEFENDANT: Mm-hmm [affirmative].

DETECTIVE STEPP: Okay. I'm gonna [sic] read your rights to you. If you understand, put your initials. If you don't, stop, and I'll explain it to you. When you get down to the bottom, if you wanna [sic] talk to me, fine, I'm not gonna [sic] beat you up, I'm not gonna [sic] threaten you, I'm not gonna [sic] have anybody, anything like that. It's gonna [sic] be a conversation. If you don't wanna [sic] have a conversation, I take you downstairs, and you go to county. But you already know the warrants were issued on you.

. . .

DETECTIVE STEPP: You don't have to make a statement or answer any questions. You have the right to remain silent. Do you understand that?

DEFENDANT: Mm-hmm [affirmative].

7

DETECTIVE STEPP: Can you put your initials there for me saying I read that and that you understood it?  And I just read this one line, that's it.  Anything you say can be used against you in the court of law.  Do you understand that?

DEFENDANT: Mm-hmm [affirmative].

DETECTIVE STEPP: Same thing, if you understand put your initials.  You have the right to talk to a lawyer for advice before you ask any questions, and to have a lawyer present during questioning.  Do you understand that?

DEFENDANT: Yea, I can't call my lawyer?

DETECTIVE STEPP: You can call your attorney as soon as I get done reading this. If you cannot afford to hire one if you so desire, one will be appointed for you for any questioning.  Do you understand that?

DEFENDANT: Mm-hmm [affirmative].

DETECTIVE STEPP: Can you put your initials right there?  If you decide to answer questions and/or make a statement, you have the right to stop answering questions and to remain silent.  Do you understand that?  And this is just saying, you can read the waiver out loud if you would please?  Can you read that out loud to me?

DEFENDANT: Knowing and understanding what my rights are, I'm going to answer questions / or make a statement at this time – I'm not making no statement.

DETECTIVE STEPP: Okay.  Could you sign it that I read it to you?  And you don't want to talk to with me?

DEFENDANT: About what? I ain't rob nobody, especially not at no gunpoint [sic].  I didn't make nobody do nothing [sic].

DETECTIVE STEPP: Okay. Now, everybody's got their side of the story, and I understand that.

DEFENDANT: I ain't [sic] even trying to be ignorant.

DETECTIVE STEPP: Did I say that?  I don't think you're being ignorant. You're being accused of some pretty heavy duty things right now.

DEFENDANT: First-degree robbery and armed criminal action.

DETECTIVE STEPP: And you know what, you didn't get an opportunity to give your side of the story, and that's what I'm here for.  I can go on what everybody else is saying, and we can stick with that. . . . Everybody's got a right.

DEFENDANT: I'm just letting you know.  All this s\*\*t they talking about, talking about I held them up at gunpoint, and all that, ya'll need to check y'all officer 'cause I ain't hold him up at no gunpoint [sic].

DETECTIVE STEPP: Then what happened?

DEFENDANT: S\*\*t.

DETECTIVE STEPP: Just be honest with me on this, was it a cut and run?

DEFENDANT: Whatchu [sic] mean a cut and run?

DETECTIVE STEPP: Grab and run.  Is that what happened?

DEFENDANT: Yup.

DETECTIVE STEPP: You know, I can understand that stuff.

DEFENDANT: I already know. I rather it'd be that than a first-degree robbery.

DETECTIVE STEPP: You rather it be what?

DEFENDANT: I'd rather it be a snatch and grab.  I ain't rob nobody [sic].  I ain't put no gun up to that man and make him do nothing [sic].  I ain't make him give me nothing [sic].  I ain't tell nobody 'this is a robbery,' there's nothing of that sort.

Defendant argues that he invoked his right to counsel when he asked, "Yea, I can't call my lawyer?"  "The mere mention of counsel by the defendant is not sufficient to preclude further police questioning."  State v. Reese, 795 S.W.2d 69, 73 (Mo. banc 1990).  "There must be a request."  Reese, 795 S.W.2d at 73.  In order for the right to attach, Defendant had to make an unambiguous and specific request for counsel in dealing with his custodial interrogation.  Lanos, 14 S.W.3d at 94.  Defendant did not articulate his desire to have counsel present sufficiently clearly that a reasonable police officer would understand that statement to be a request for an attorney.  See Harris, 305 S.W.3d at 485.  He simply asked whether he could call his lawyer and was then instructed that he could do so after Detective Stepp was finished reading the Miranda warning.

9

Moreover, Defendant voluntarily waived his right by continuing to make statements to Detective Stepp even after he mentioned calling his lawyer. The State must prove by a preponderance of the evidence that the accused validly waived his Miranda rights. State v. Pennington, 408 S.W.3d 780, 784-85 (Mo. App. W.D. 2013). This waiver inquiry has "two distinct dimensions:" (1) the waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception;" and (2) the waiver must have been made "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Pennington, 408 S.W.3d at 784.

In this case, the evidence established that Defendant voluntarily continued speaking to Detective Stepp despite his initial assertion that he did not want to make a statement. The State was not required to show that Defendant's waiver of his Miranda rights was an express waiver because Defendant's uncoerced statements made after he was given the Miranda warning established an implied waiver of those rights given that evidence also showed Defendant understood the Miranda warning. See Pennington, 408 S.W.3d at 785. Detective Stepp asked whether Defendant had ever been informed of his Miranda rights before, and Defendant affirmed that he had been previously informed. Detective Stepp provided Defendant with a form describing Defendant's Miranda rights and read those rights aloud to Defendant while Defendant followed along and affirmed that he understood. Consequently, when Defendant voluntarily asserted that he "ain't rob nobody, especially not at no gunpoint" after he had already acknowledged his understanding of his Miranda rights and absent a specific and clear request to have his attorney present, Detective Stepp was not required to stop interviewing Defendant. See Harris, 305 S.W.3d at 485. Detective Stepp was following the procedure required under Miranda. This situation demonstrates the difficult position police officers encounter when

10

advising an accused of his Constitutional rights and the accused interrupts repeatedly before the required <u>Miranda</u> warnings are completed. After considering the totality of the circumstances, we find Defendant's statements were equivocal, ambiguous, and spontaneous.

The trial court did not clearly err in overruling Defendant's motion to suppress. Point I is denied.

The Trial Court's Finding that Defendant was a Dangerous Offender

In his second point on appeal, Defendant claims the trial court erred in finding him to be a dangerous offender pursuant to Section 558.016 on the sentence and judgment form because the State never alleged in the indictment nor proved beyond a reasonable doubt that Defendant was a dangerous offender. Defendant requests this Court to amend the sentence and judgment to remove Defendant's designation as a dangerous offender. In its Responsive Brief, the State concedes that the trial court erred under this point.

The trial court may sentence a defendant who has pleaded guilty to or has been found guilty of an offense to an extended term of imprisonment if the court finds the defendant is a dangerous offender. Section 558.016.1. Under Section 558.016.2, a "dangerous offender" is one who:

> (1) Is being sentenced for a felony during the commission of which he knowingly murdered or endangered or threatened the life of another person or knowingly inflicted or attempted or threatened to inflict serious physical injury on another person; and
> (2) Has pleaded guilty to or has been found guilty of a class A or B felony or a dangerous felony.

The trial court shall find a defendant to be a dangerous offender only if the indictment or information, original or amended, or the information in lieu of an indictment pleads all essential facts warranting a finding that the defendant is a dangerous offender; and evidence is introduced that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the

11

defendant is a dangerous offender; and the court makes findings of fact that warrant a finding beyond a reasonable doubt by the court that the defendant is a dangerous offender. Section 558.021.1.

The indictment did not include any mention of previous crimes of which Defendant had been convicted and did not charge Defendant as a dangerous offender. No evidence was presented to establish any prior convictions attributable to Defendant, and Defendant's sentence assessment report indicated Defendant had no prior convictions. At the sentencing hearing, the trial court did not find Defendant to be a dangerous offender; thus, the trial court erred in checking the "Dangerous Offender" box on the sentence and judgment form. However, we need not remand the case to the trial court for re-sentencing. Under these circumstances, this Court may finally dispose of the matter and correct the judgment of conviction and sentence of Defendant to reflect sentencing without designating Defendant a dangerous offender. Rule 30.23; see also State v. Williams, 145 S.W.3d 874, 879 (Mo. App. E.D. 2004).

Conclusion

We correct the judgment of conviction and sentence in State of Missouri v. Terrance Teron Norman, Case No. 1211-CR00439-01, St. Charles County, Eleventh Judicial Circuit, by ordering that the Sentence and Judgment form be modified by deleting any reference to Defendant as a dangerous offender. In all other respects, the judgment of conviction and sentence of the trial court is affirmed.

_____
Mary K. Hoff, Presiding Judge


Kurt S. Odenwald, Judge and
Angela Turner Quigless, Judge, concur.

12