

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. )    No. SD35351
)
NEIL N. HOWLAND, )    **Filed: June 20, 2019**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF NEW MADRID COUNTY

Honorable Fred W. Copeland, Circuit Judge

## AFFIRMED

Neil N. Howland ("Defendant") was charged by information with six offenses arising out of Defendant's mother's death on August 7, 2013, in Scott County. Count I charged murder in the first degree (Defendant, after deliberation, knowingly caused the death of his mother by choking her); Count II charged abandonment of a corpse (Defendant knowingly abandoned his mother's corpse); Count III charged tampering with physical evidence (Defendant destroyed a leash used to choke his mother); Count IV charged knowingly burning (Defendant knowingly damaged his mother's vehicle by starting a fire); and each of Counts V and VI charged animal abuse (Defendant purposely

1

killed two dogs and, while the dogs were alive, consciously tortured the dogs).

Following a change of venue from Scott County to New Madrid County and Defendant's waiver of his right for a jury to assess his sentence in the event of one or more guilty verdicts, a jury found Defendant guilty of each of the six charged offenses. The trial court subsequently sentenced Defendant to imprisonment for life without the possibility of probation or parole on Count I, and to consecutive terms of imprisonment of four years on each of Counts II through VI.

Defendant appeals claiming in a single point that the trial court "erred in overruling" Defendant's motion to suppress inculpatory statements that Defendant made to law enforcement officers in an interview that began shortly after 8 p.m., on August 10, 2013, in that Defendant "invoked his privilege against self-incrimination" in an interview that occurred shortly before 6 p.m., earlier that same evening, and the officers' "reinitiation of interrogation without further Miranda warnings by the officers did not scrupulously honor [Defendant's] invocation of his rights." We reject Defendant's point and affirm the trial court's judgment because the trial court did not err in denying Defendant's motion to suppress Defendant's statements made to the officers in the second interview on August 10, and in admitting those statements at trial.

## Standard of Review and Applicable Legal Principles

In the context of a criminal defendant's claim that the trial court "erred in overruling his motion to suppress statements he made during his police interrogation because the statements were made after he invoked his right to silence and the police failed to scrupulously honor his invocation," our Supreme Court recently observed:

> "This Court reviews a trial court's ruling on a motion to suppress in the light most favorable to the ruling and defers to the trial court's

2

determinations of credibility." *State v. Edwards*, 116 S.W.3d 511, 530 (Mo. banc 2003). The circuit court's ruling on a motion to suppress will not be reversed unless the decision was clearly erroneous. *State v. Holman*, 502 S.W.3d 621, 624 (Mo. banc 2016). A ruling is clearly erroneous if the Court is "left with a definite and firm belief a mistake has been made." *Id*.

Whether conduct violates the Fifth Amendment is a question of law and is given *de novo* review. *Id*. This Court will "indulge every reasonable presumption against waiver of fundamental constitutional rights." *State v. Bucklew*, 973 S.W.2d 83, 90 (Mo. banc 1998). "A properly preserved federal constitutional error in a criminal trial does not require reversal and remand for a new trial if the reviewing court determines the error was harmless beyond a reasonable doubt." *State v. Minner*, 256 S.W.3d 92, 96 (Mo. banc 2008).

[The defendant] argues he unequivocally invoked his right to silence several times during the police interrogation and the statements he made after he invoked that right should not have been admitted at trial. After a person receives *Miranda* warnings, "[i]f the individual indicates in any manner, at any time prior to or during the questioning, that he wishes to remain silent, the interrogation must cease." *Miranda*, 384 U.S. [436,] 473-74, 86 S.Ct. 1602 [(1966)] (emphasis added). The accused's Fifth Amendment right to cease police questioning "must be scrupulously honored." *State v. Simmons*, 944 S.W.2d 165, 173 (Mo. banc 1997).

"[N]o ritualistic formula or talismanic phrase is essential in order to invoke the privilege against self-incrimination." *Emspak v. United States*, 349 U.S. 190, 194, 75 S.Ct. 687, 99 L.Ed. 997 (1955). But to invoke this right, the individual "must give 'a clear, consistent expression of a desire to remain silent.'" *Simmons*, 944 S.W.2d at 173-74 (quoting *United States v. Thompson*, 866 F.2d 268, 272 (8th Cir. 1989)). If the invocation is ambiguous or equivocal, the police are not required to end the interrogation and are not required to ask questions to clarify whether the accused is invoking his right to silence. *See Berghuis v. Thompkins*, 560 U.S. 370, 381-82, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010). To determine whether an individual has unambiguously invoked his right to remain silent, "[t]he individual's statements are viewed in their entirety." *State v. Cannon*, 469 S.W.3d 887, 892 (Mo. App. E.D. 2015).

*State v. Rice*, No. SC96737, 2019 WL 1446931, at *8 (Mo. banc Apr. 2, 2019) (headings omitted). In addition, an appellate court "will consider all evidence presented at trial as well as evidence presented at a pre-trial hearing on the motion to suppress." *State v. Norman*, 431 S.W.3d 563, 568 (Mo.App. E.D. 2014).

**Evidence at Motion to Suppress Hearing (December 2015) as Supplemented by Evidence at Trial (December 2017)**

Viewed in accordance with our standard of review, the evidence showed the following. Defendant's mother's body and her vehicle were found in the early evening on August 7, 2013, burning in a cornfield in Scott County. Deputy Barry Morgan with the Scott County sheriff's office was dispatched to Defendant's mother's home later that evening where he encountered Defendant. At Deputy Morgan's request, Defendant accompanied Deputy Morgan to the Scott County sheriff's office where Detective Andy Caton with the Sikeston Department of Public Safety interviewed Defendant shortly before midnight. At the time of Detective Caton's interview, Defendant was not a "suspect" but rather was "interview[ed] for background information," and was "free to leave" when the "interview was over."

In the early evening of the following day, August 8, Missouri State Highway Patrol Corporal[1] Jeff Johnson and Lieutenant Jerry Bledsoe with the Scott County sheriff's office interviewed Defendant a second time in an "interview room at the Scott County sheriff's office" -- Defendant was advised of his *Miranda*[2] rights at the outset of this interview even though he came to the interview "voluntarily" because, by that time, the investigators "had determined that [Defendant] more than likely was responsible for the crime." Missouri State Highway Patrol Sergeant Brad Lively arrested Defendant on August 9, 2013, on an unrelated matter involving Defendant's alleged conduct toward his step-father. Defendant again was advised of his *Miranda* rights at the time of his arrest,

---

[1] At the time of the hearing on Defendant's motion to suppress in December 2015, Jeff Johnson was a sergeant with the Missouri State Highway Patrol, and was a criminal investigator/sergeant with the Missouri State Highway Patrol at the time of trial in December 2017.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

but was not interviewed until later that day when Corporal Johnson and Lieutenant Bledsoe again advised him of his *Miranda* rights and interviewed him a third time. Defendant never admitted in any of these interviews that he was involved in causing his mother's death. Also, Defendant does not claim, and there is no indication in the record, that Defendant ever invoked his right to remain silent in any of these interviews.

Subsequently, about 5:15 p.m., on August 10, 2013, Defendant requested through a jail employee to speak to an investigating officer because he "wanted to confess." Corporal Johnson and Lieutenant Bledsoe spoke to Defendant that day about 5:45 p.m. – the officers again advised Defendant of his *Miranda* rights but were unable to ask Defendant substantive questions about the offenses under investigation because Defendant conditioned his desire to speak to the officers on the officers' assurances that Defendant would be permitted to see his girlfriend and infant child.[3] The officers told Defendant they did not have the authority to grant his request, and ended the interview.

The officers then spoke to the sheriff and obtained permission to permit Defendant to see his girlfriend and infant child. Defendant again requested through a jail employee to speak to an investigating officer,[4] and Corporal Johnson and Lieutenant Bledsoe subsequently spoke to him shortly after 8 p.m., that same evening. In that

---

[3] Defendant also made other requests of the officers including that Defendant be given normal jail clothing to wear and returned to the general jail population. At the time of the interviews on August 10, the Scott County sheriff was concerned Defendant might attempt to harm himself and had placed him in a "paper gown" and removed him from the general jail population. Defendant also had asked a question about evidence.

[4] Corporal Johnson only mentioned Defendant's second request to speak to an investigating officer once in the suppression hearing, and did not mention a second request at all at trial. The trial court made no express finding on a second request to speak to an investigating officer, and did not rely expressly on a second request in denying Defendant's suppression motion.

interview, the officers did not again advise Defendant of his *Miranda* rights,[5] but told Defendant the officers now had permission for Defendant to see his girlfriend and infant son following the interview. Defendant told the officers he had killed his mother, placed her body in her vehicle, drove his mother's vehicle into a corn field, doused the vehicle with gasoline and set it on fire, and later burned a dog leash he had used to kill his mother. Defendant's mother's two small dogs also were in the vehicle and were killed.[6]

After the interview concluded, Defendant was permitted to speak with his girlfriend over the phone.

Defendant's motion to suppress sought to suppress Defendant's statements to Corporal Johnson and Lieutenant Bledsoe in their second interview of Defendant on August 10, 2013. On July 27, 2016, following the suppression hearing in December 2015, the trial court denied Defendant's motion in a docket entry that stated:

> Motion Denied
> The Court, being fully advised, does hereby overrule the defendant's Motion to Suppress Statements. The Court finds that the defendant was properly "Mirandized" and the defendant freely, voluntarily, and intelligently waived his Miranda rights. The Court further finds that the defendant's statements were freely and voluntarily made after waiving his Miranda rights. The Court finds that the break in the questioning of the defendant by officers was not a result of the defendant invoking his Miranda rights, but rather an attempt of the officers to fulfill the request of the defendant to speak with his girlfriend. The Court finds that no further Mirandizing of the defendant was required.

---

[5] Toward the end of the interview, the officers did remind Defendant of his *Miranda* rights, and Defendant acknowledged that he remembered and understood his rights.

[6] At trial in August 2017, Defendant testified that his mother died when she fell down stairs in the course of an altercation with Defendant's girlfriend. Defendant then disposed of his mother's body by burning her body in her vehicle. Defendant denied placing his mother's dogs in her vehicle before burning the vehicle, but stated on cross examination that he "guess[ed] they were already in there." The State called the girlfriend in rebuttal, and the girlfriend testified that Defendant strangled his mother in the course of an altercation with Defendant and the girlfriend.

6

Defendant renewed the motion to suppress on the first morning of trial before *voir dire* began, and again when the State called Corporal Johnson as a witness at trial. The trial court reaffirmed its denial of the motion each time it was renewed, and, at the time Corporal Johnson was called as a witness, granted Defendant a continuing objection as to Defendant's statements that were the subject of the motion to suppress. The trial court also denied Defendant's motion for a new trial in which Defendant again asserted that the trial court had erred in denying Defendant's motion to suppress.

**Analysis**

Defendant's point is fundamentally flawed because it rests on a conclusion that Defendant invoked his right to remain silent in the first interview on August 10, 2013. However, Defendant's statements in the first interview viewed in their entirety did not "give a clear, consistent expression of a desire to remain silent." To the contrary, Defendant's statements show a clear expression of Defendant's desire to speak to the investigating officers subject to the officers' assurances that certain conditions would be met. When the officers could not provide the assurances requested, the interview ended and then resumed slightly more than two hours later when the officers had obtained permission to provide the requested assurances. Defendant never clearly and unequivocally invoked his right to remain silent in the first interview on August 10. As a result, the trial court did not err in denying Defendant's motion to suppress Defendant's

statements made to the officers in the second interview on August 10, and in admitting those statements at trial.[7]

Defendant's point is denied, and the trial court's judgment is affirmed.

Nancy Steffen Rahmeyer, J. – Opinion Author

Don E. Burrell, P.J. – Concurs

Gary W. Lynch, J. – Concurs

---

[7] Defendant does not assert that, even in the absence of an invocation of Defendant's *Miranda* rights, the officers were required to re-advise Defendant of his *Miranda* rights before the second interview on August 10. Defendant's position is understandable because, in the absence of an invocation of a defendant's *Miranda* rights, law enforcement officers generally are not required to rewarn the defendant before every statement or interview. *See* **Berghuis v. Thompkins**, 560 U.S. 370, 386 (2010) (in the absence of an invocation, "[p]olice are not required to rewarn suspects from time to time."); **United States v. Rodriquez-Preciado**, 399 F.3d 1118, 1129, 1128-30 (9th Cir.) (in the absence of an invocation, an approximately sixteen-hour interval between *Miranda* warning and second interview did not require that the defendant be re-advised of his *Miranda* rights), *amended on a different ground by*, 416 F.3d 939 (9th Cir. 2005).