

# Missouri Court of Appeals
## Southern District

In Division

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | No. SD37221 |
| | ) | |
| LONNIE LEROY WILLIAMS, | ) | **Filed: September 6, 2022** |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Becky J. W. Borthwick

**AFFIRMED**

Lonnie Leroy Williams ("Defendant") challenges his convictions, following a jury trial, of one count of first-degree murder and one count of unlawful use of a weapon for fatally stabbing MacKenna Milhon ("Victim") on or about December 20, 2019. *See* sections 565.020 and 571.015.[1]

In two points relied on, Defendant claims the circuit court erred in: (1) overruling his motion to suppress "statements" and in admitting into evidence the video recording of his interrogation by the police, in which he confessed to the murder; and (2) overruling his objection and refusing to grant a "mistrial" when the prosecutor in *voir dire* told the

---

[1] Unless otherwise indicated, all statutory citations are to RSMo 2016.

1

first of two groups of potential jurors that the case they would be sitting on was not a death-penalty case. Because neither challenge was preserved for appeal, we affirm.

## Background[2]

Surveillance cameras showed Defendant with Victim at various gas stations in Springfield on the evening of December 19, 2019. Victim's mother ("Mother") last spoke to Victim by phone at around 2:15 a.m. the next morning. After that one phone call, Mother called the police when she was unable to reach Victim again.

Defendant lived with his girlfriend, Olivia Vega ("Girlfriend"), and they had argued earlier in the evening of December 19, 2019. Defendant left the house and would not answer Girlfriend's calls or texts. When Defendant returned home, he was upset and had blood on his hands. He told Girlfriend that he had killed someone, and he started crying. Defendant then told Girlfriend that he had killed "Kenna" during "a robbery gone wrong[.]" Defendant also motioned to his throat and said that "all of this was gone."[3]

Girlfriend also saw blood stains in Defendant's car, a set of Defendant's clothes in its trunk, including boots that had blood on them, and that Defendant had a knife inside his backpack. Within a couple of weeks, police located Victim's body outside the city limits in an area cluttered with a lot of trash and other debris.

GPS data showed that around 2:30 a.m. on December 20, 2019, Defendant's car had been near the area in which Victim's body had been found, and the police

---

[2] Defendant does not challenge the sufficiency of the evidence supporting his convictions, and we view the evidence in the light most favorable to the circuit court's ruling. **State v. Howland**, 576 S.W.3d 619, 621 (Mo. App. S.D. 2019).

[3] Defendant's statements to Girlfriend about Victim's injuries were consistent with the results of an autopsy of Victim that found that her cervical vertebrae 2 through 4 showed sharp force trauma, which indicated that she had been cut eight times at her neck. The wounds were to the front of her bones, indicating that Defendant had cut all the way through her throat to hit those bones. One cut was so forceful that it penetrated the entire vertebra.

interviewed Defendant on January 2, 2020.[4] The approximately five-hour interview was videotaped, and it took place at the jail in which Defendant was being held on an unrelated matter. During that interview, Defendant eventually confessed to taking part in Victim's murder. A court-edited version of the recorded interview was introduced into evidence as State's Exhibit 201, and it was played for the jury over Defendant's objection that incorporated the arguments he had made before trial in support of his pretrial motion to suppress Defendant's statements. The objection was to the admission of the exhibit "in its entirety."

We will recite additional evidence, and the attorneys' interactions with the circuit court at trial, as needed to address Defendant's points on appeal.

**Analysis**

*Point 1 – Suppression of Evidence*

Involuntarily obtained confessions are barred from being admissible at trial by the Due Process Clause. *State v. Faruqi*, 344 S.W.3d 193, 203 (Mo. banc 2011) (citing *Ashcraft v. Tennessee*, 322 U.S. 143, 155, 64 S.Ct. 921, 88 L.Ed. 1192 (1944)). "The test for whether a confession is voluntary is whether the totality of the circumstances created a physical or psychological coercion sufficient to deprive the defendant of a free choice to admit, deny, or refuse to answer the examiner's questions." *Id.* (internal quotation and citation omitted). "In determining whether a defendant's confession resulted from improper coercion, this Court considers a range of factors relating to the defendant, including his or her age, experience, intelligence, gender, lack of education, infirmity, and unusual susceptibility to coercion." *Id.* (internal quotation and citation omitted). "The Court also considers whether the defendant was advised of his rights, the length of the detention, the repeated and prolonged nature of the questioning, and the use of coercive techniques such as deprivation of

---

[4] Police interviewed Defendant a total of three times. The first took place on December 23, the second on December 27, and the interview at issue in this appeal occurred on January 2, 2020. During the December 23 interview, police told Defendant that he was not under arrest, and he agreed to ride with officers to show them where he had gone with Victim and where he had dropped her off. During the December 27 interview, officers asked Defendant some "clarifying questions[.]" On that date, Defendant was in jail on an unrelated matter and Victim's body had not yet been found.

3

food or sleep." *Id.*

***State v. Hines***, No. SD 37164, 2022 WL 1679406, at *5 (Mo. App. S.D. May 26, 2022).

"Our review of the trial court's ruling on a motion to suppress evidence is limited to a determination of whether the evidence was sufficient to support the trial court's ruling." *Id.* at *5 (quoting ***State v. Norman***, 431 S.W.3d 563, 568 (Mo. App. E.D. 2014)). We will reverse the circuit court's ruling on a motion to suppress only if it is clearly erroneous. ***Howland***, 576 S.W.3d at 621. We review questions of law *de novo*. ***Id.***

Here, we set forth Defendant's multifarious first point *verbatim* to fully capture its unrefined, unlimited scope.

> The [circuit] court clearly erred overruling [Defendant]'s motion to suppress statements and abused its discretion *admitting Exhibit 201, the January 2, 2020, interrogation video **and all associated evidence***, in derogation of [Defendant]'s rights against self-incrimination, to a fair trial, and to due process of law under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10, 18(a), and 19 of the Missouri Constitution, in that, where [Defendant] was interrogated for nearly five hours by two officers, where a high level of emotional intensity pervaded almost the entirety of that interrogation, and where [officer] Williams made numerous appeals to [Defendant]'s conscience having knowledge of [Defendant]'s particular susceptibility to such appeals, [Defendant]'s statements were not knowingly, intelligently, and voluntarily made under the totality of circumstances; because his confession is powerful *sui generis* evidence of guilt, the [circuit] court's admission of [Defendant]'s January 2, 2020, interrogation video deprived him of a fair trial.

(Emphasis added.)

In like manner to his point on appeal -- which fails to identify a single allegedly incriminating statement made by Defendant during his interview or indicate what "all associated evidence" might be -- we next present his pretrial Motion to Suppress, which did not assert a single case-specific allegation of police coercion:

COMES NOW DEFENDANT, by and through counsel, and moves this court to suppress evidence of the statements taken from Defendant by law enforcement agents which Defendant believes the State intends to introduce into evidence against him at trial. The statements were obtained in violation of Defendant's rights against self-incrimination, right to counsel, and due process of law as guaranteed by Article I, Sections 10, 18(a), and 19 of the Missouri Constitution and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. As grounds, Defendant states:

A. Defendant's statements were not voluntary in that:

1. The length in nature of Defendant's custody and the duration and nature of Defendant's interrogation and the conditions under which it was conducted, were inherently coercive as applied to a person of Defendant's age, education, background, and physical and mental condition at the time such interrogation occurred.

2. The statement is not an accurate reflection and record of the conversations between Defendant and the interrogating officials.

3. Defendant was subjected to mental and physical duress prior to and during the interrogation, and this statement obtained was the direct result of threats and promises made to Defendant prior to and during the interrogation by the interrogating officials.

4. Defendant's repeated requests to speak with an attorney, made both prior to and contemporaneously with the interrogation, were ignored by the interrogating officials.

5. Defendant was not presented to a judicial officer "as soon as practicable," and said it [sic] statements was obtained prior to presentation to a judicial officer.

B. Defendant's statements were made without [Defendant] first being advised of his constitutional rights, to wit:

1. Defendant was not advised in clear and unequivocal terms of him [sic] right to remain silent prior to her [sic] interrogation.

2. Defendant was not advised that anything he said could and would be used against him in court.

3. Defendant was not advised of his rights to consult with a lawyer and to have a lawyer present with him during the interrogation.

5

4. Defendant was not advised that a lawyer would be appointed for him if he was indigent.

5. Defendant did not knowingly and intelligently waive his right to remain silent or his right to counsel, or his right to have counsel appointed for him.

6. The interrogation by police officers did not cease when [Defendant] indicated he wished to remain silent.

C. Any alleged statements are the result of an unlawful arrest in violation of Defendant's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 15 of the Missouri Constitution.

> WHEREFORE, Defendant moves this Court to suppress any evidence concerning any oral, written or recorded statements alleged to have been made to law enforcement officials or other witnesses in connection with this case, for a hearing and for such other relief as this Court deems just.

Defense counsel's objection at trial to the admission of State's Exhibit 201 in its entirety was, "Judge, I previously made a pretrial motion [the Motion to Suppress] that went to this exhibit. I would renew that now and object on those grounds previously stated to the Court to this exhibit in its entirety." Presented with a general objection to the admission of the entire exhibit, the circuit court did not err in summarily overruling it. *See* **State v. Goins**, 306 S.W.3d 639, 645-46 (Mo. App. S.D. 2010) ("'objection to any hearsay statements based on the same arguments we made to the 491 hearing' did not adequately preserve defendant's later argument that the statements 'amounted to improper bolstering and cumulative evidence.'" (quoting **State v. Brethold**, 149 S.W.3d 906, 909 (Mo. App. E.D. 2004)).

Defendant's first point contains the same flaws. It fails to identify with particularity the statements and associated evidence that he claims was erroneously

6

admitted, and it fails to provide a legal reason in the context of the evidence presented in this particular case for excluding that evidence. *See* Rule 84.04(d)(1)(C)[5] and ***State v. Martin***, 291 S.W.3d 269, 289-90 (Mo. App. S.D. 2009). Defendant's motion to suppress statements, recited *in toto* above, contains only generic allegations of alleged police coercion, and those generic allegations are not tied to any specific statements made by Defendant. Defendant's interview with police lasted approximately five hours, and Defendant's generic arguments on appeal would require this court to search the record on our own to determine what might constitute coercion at any given point during that interview. Our high court has long held that this is something we cannot do. *See, e.g.,* ***Thummel v. King***, 570 S.W.2d 679, 686 (Mo. banc 1978). "It is incumbent upon [the defendant] in his Motion to Suppress [] to be definite, specific, factual, and not conclusory; otherwise nothing is preserved for appellate review." ***State v. Thomure***, 706 S.W.2d 521, 523 (Mo. App. E.D. 1986).

"A point relied on which does not state 'wherein and why' the trial court erred does not comply with Rule 84.04(d)[6] and preserves nothing for appellate review." ***Storey v. State***, 175 S.W.3d 116, 126 (Mo. banc 2005) (quoting ***Avis Rent-A-Car Sys., Inc. v. Howard***, 133 S.W.3d 122, 123-24 (Mo. App. E.D. 2004)). Point 1 fails.

*Point 2*

Defendant's second point claims the circuit court abused its discretion in "overruling" his objection and "refusing to declare a mistrial" after the prosecutor told the first of two separate groups of potential jurors that "in case you're wondering, I'll tell

---

[5] Unless otherwise indicated, all rule references are to Missouri Court Rules (2021).
[6] Made applicable by Rule 30.06(a), which directs that "[t]he form and contents of the [appellate] briefs shall contain the material prescribed by Rule 84.04 and Rule 84.06."

you, [this case] is not a death penalty case, but it is a murder in the first degree case" in that the prosecutor "suffused the venire with an unwarranted sentencing consideration[.]"

In response to the prosecutor's statement, defense counsel made the following objection.

> [Defense Counsel]: I'm going to object. Can we approach, Judge?
>
> (The following was held outside the presence of the [first] venire panel:)
>
> [Defense Counsel]: I'm going to object to the fact that he asserted punishment into this stage of the jury. I know what he was intending, but *I think the fact that he eluded [sic] to the death penalty is referencing the punishment, and that's not pertinent to this case. And so I think it's prejudicial that we're talking punishment before we even have the culpability phase. So I'm going to object on those grounds and, I guess,* **ask for a new panel**.
>
> [Prosecutor]: Well, I disagree entirely. People get really worried if they hear first degree murder and think it's a death penalty case and all I've said is that it's not one.
>
> THE COURT: Objection overruled at this stage, but no further discussion regarding any sort of penalty ranges.

(Emphasis added.)

Point 2 purports to challenge a ruling that was not made by the circuit court. Defendant did not request a mistrial. His request at trial was that the jury be chosen from a new panel of potential jurors. Defendant cannot seek relief on appeal that is different from the relief requested in the circuit court. *City of St. Peters v. Dep't of Nat. Res. of State of Mo.*, 797 S.W.2d 514, 516 (Mo. App. W.D. 1990).[7]

---

[7] In his reply brief, Defendant continued to insist that he had properly preserved his claims of error, but he also asked for plain-error review if we found them to be unpreserved. That request comes too late as "[a]ssignments of error set forth for the first time in the reply brief do not present issues for appellate

Due to COVID-19 protocols in effect at the time, the larger panel summoned for the case was split into two separate groups. The first group was questioned in the morning, and the second was questioned after the lunch break. The prosecutor complied with the circuit court's directive not to discuss potential punishment during the *voir dire* of the second group.

Assuming, *arguendo*, that the prosecutor's comment was somehow prejudicial to Defendant, Defendant had access to a group of prospective jurors that had not been exposed to any mention of potential punishment. In addition, after both groups had been examined, defense counsel did not ask that *any* of the venirepersons be stricken for cause. The State also suggested no strikes for cause were appropriate, and the attorneys then made their peremptory strikes. Once that was completed the following colloquy occurred (juror names omitted):

> THE COURT: The jury that I have now listed is as follows: Juror No. 9; Juror No. 10; Juror No. 13; Juror No. 14; Juror No. 15, Juror No. 17; Juror No. 23; Juror No. 24; Juror No. 26; Juror No. 27; Juror No. 28; Juror 29. And the alternates: Juror No. 35; and Juror No. 37.
>
> To the State, is that the jury you have selected?

---

review[.]" **In re Gilbert**, 563 S.W.2d 768, 771 (Mo. banc 1978). In any event, we would have denied plain-error review even if it had been timely requested.

> "Rule 30.20 is no panacea which a criminal defendant can use to obtain appellate review of any alleged error that is unpreserved." *State v. Campbell*, 122 S.W.3d 736, 739 (Mo. App. S.D.2004). "[A]n appellate court is not required to engage in plain error review; the decision whether to grant or deny such a request is left to the court's discretion." *Id.* at 740. "The court may simply decline to exercise its discretionary authority to review the point for plain error." *Shifkowski v. State*, 136 S.W.3d 588, 590 (Mo. App. S.D. 2004).

**State v. Sinor**, 593 S.W.3d 113, 116 (Mo. App. S.D. 2020) (footnote omitted).

| [Prosecutor]: | It is. |
| THE COURT: | And [*Defense counsel*]*, is that the jury you have selected?* |
| [*Defense counsel*]*:* | ***It is***. |
| THE COURT: | *Is there anything further for the record that we need to address today before we give the list to the jury coordinators. From the defense?* |
| [*Defense counsel*]*:* | ***No, Your Honor***. |
| THE COURT: | Anything further from the State? |
| [Prosecutor]: | No, ma'am. |

(Emphasis added.)

This record demonstrates that Defendant had abandoned his initial objection and affirmatively agreed to the composition of the jury that ultimately decided his guilt. When a defendant affirmatively agrees to what the circuit court proposes, "any claim of error related to the trial court's action is affirmatively waived[.]" ***State v. Winters***, 623 S.W.3d 746, 753 (Mo. App. W.D. 2021). Point 2 also fails, and the judgment of the circuit court is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

JACK A. L. GOODMAN, J. – CONCURS